[No. F011372. Fifth Dist. Nov. 22, 1989.]

CALIFORNIA EYE INSTITUTE et al., Petitioners, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
DAVID B. KAYE et al., Real Parties in Interest.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

McCormick, Barstow, Sheppard, Wayte & Carruth, Lawrence E. Wayte, David H. Bent and Matthew K. Hawkins for Petitioners.

Horvitz & Levy, David Axelrad and David Ettinger as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Charles O. Morgan, Jr., and Paul Kleven for Real Parties in Interest.

**OPINION**

**ARDAIZ, J.—**

### FACTUAL AND PROCEDURAL BACKGROUND

Dr. David B. Kaye is an ophthalmologist with an emphasis on refractive and cataract surgery. He began practicing in Fresno in 1980. Between

October 1982 and April 1984 Saint Agnes Medical Center monitored all Dr. Kaye's cases, preoperatively, intraoperatively, and postoperatively. Saint Agnes Medical Center informed Dr. Kaye that the restriction of his staff privileges was instituted by the board of trustees executive committee on the recommendation of the medical staff executive committee. In April 1984, Saint Agnes ceased monitoring Dr. Kaye and restored him to full staff privileges.

In 1987 Dr. Kaye filed suit against California Eye Institute, California Eye Institute Management Corporation, Saint Agnes Medical Center, Saint Agnes Hospital and several doctors, individually. He alleged several causes of action based in part on the claim his hospital staff privileges wrongfully had been restricted at the named medical center.

Dr. Kaye sought discovery of certain documents relating to the restriction of his privileges. Saint Agnes claimed the documents were privileged under Evidence Code section 1157. Dr. Kaye claimed he fell within an exception to the bar of section 1157. The trial court agreed and granted Dr. Kaye's motion to compel production of documents.

On December 2, 1988, California Eye Institute, Saint Agnes Medical Center and Dr. Frederick Richburg filed in this court a petition for a writ of mandate and a request for a temporary stay. A temporary stay was issued on December 2, 1988. On March 17, 1989, this court issued an order to show cause.

DISCUSSION

I

Evidence Code[1] section 1157 provides the records of a hospital staff committee are immune from discovery when the committee has "the responsibility of evaluation and improvement of the quality of care rendered in the hospital . . . ." Subdivision (c) of this section provides a narrow exception to the "prohibition relating to discovery" to "any person requesting hospital staff privileges."[2]

---

[1] Unless otherwise indicated, all statutory references are to the Evidence Code.

[2] Section 1157 provides in pertinent part: "(a)   Neither the proceedings nor the records of organized committees of medical, medical-dental, . . . staffs in hospitals having the responsibility of evaluation and improvement of the quality of care rendered in the hospital, or medical or dental review . . . committees of local medical, . . . societies, having the responsibility of evaluation and improvement of the quality of care, shall be subject to discovery. [¶] . . . . [¶] (c) The prohibition relating to discovery or testimony does not apply to the statements made by any person in attendance at a meeting of any of those committees who is a party to an action or proceeding the subject matter of which was reviewed at that meeting, or *to any*

On June 19, 1989, this court gave the California Association of Hospital and Health Systems (CAHHS) permission to file a brief as amicus curiae. ■ Amicus contends the exception contained in section 1157, subdivision (c) is inapplicable because Dr. Kaye is not a person "requesting hospital staff privileges." For the reasons discussed herein, we agree. Dr. Kaye had been reinstated to full hospital staff privileges approximately three years before this damage action was commenced. Under the plain meaning of the language of the narrow exception to section 1157, a physician may obtain access to such records only if he/she is "requesting hospital staff privileges." Dr. Kaye's action is one for damages rather that an action for administrative mandamus (Code Civ. Proc., § 1094.5) seeking to currently become or remain a hospital staff member. Accordingly, Dr. Kaye does not fall within the plain and unambiguous terms of the exception to section 1157 applicable only where a person is "requesting hospital staff privileges."[3]

■ Courts must construe statutes to effectuate the intent of the Legislature. "In determining such intent '[t]he court turns first to the words themselves for the answer.' [Citation.] We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.] 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' [Citation.]" (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

The plain meaning of a statute should be followed where its language is clear and unambiguous. (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].) "We give effect to statutes according to the usual, ordinary import of the language employed in framing them. When statutory language is clear and unambiguous there is no need for construction, and courts should not indulge in it. [Citations.]" (*West Covina Hospital* v. *Superior Court* (1986) 41 Cal.3d 846, 850 [226 Cal.Rptr. 132, 718 P.2d 119, 60 A.L.R.4th 1257].) Conversely, a literal interpretation of the statute need not be given where to do so would sacrifice "the manifest reason and the obvious design of the law . . . ." (*County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 639 [122 P.2d 526].)

---

*person requesting hospital staff privileges,* or in any action against an insurance carrier alleging bad faith by the carrier in refusing to accept a settlement offer within the policy limits." (Italics added.)

[3]Petitioners contend the exception to the privilege contained in subdivision (c) of section 1157 applies only where a physician's hospital staff privileges have been entirely denied, suspended, or terminated. They argue Dr. Kaye's privileges were merely restricted and thus he is not a person described in subdivision (c) of section 1157. Because we conclude the exception is inapplicable on the grounds asserted by amicus, we need not address this contention.

Here, the "manifest reason and the obvious design of the law" is served by following the statute's plain language.

Dr. Kaye relies on *Roseville Community Hospital* v. *Superior Court* (1977) 70 Cal.App.3d 809 [139 Cal.Rptr. 170] in suppport of his argument that the exception applies in a damage action by a physician who currently enjoys full staff privileges. There, the controversy arose out of the hospital's dismissal of a partnership of pathologists as the exclusive clinical pathologists for the hospital. The pathologists sought a declaration of their rights and duties under an arbitration award and money damages. The trial court permitted discovery of the hospital peer committee's minutes and tape recordings. The hospital sought mandate to review that order. The appellate court denied the writ, thereby approving discovery under the staff privileges exception to section 1157. The court in substance interpreted the termination of the contract as a termination of staff privileges.

■ The nonapplicability of the exception to the privilege in a damage action was not before the court. Because the issue was not considered, *Roseville* is not authority for the proposition that the exception to the privilege is applicable to damage actions. Cases are not authority for propositions not considered. " 'Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.' " (*Canales* v. *City of Alviso* (1970) 3 Cal.3d 118, 127-128, fn. 2 [89 Cal.Rptr. 601, 474 P.2d 417]; see also *Delta Farms Reclamation Dist.* v. *Superior Court* (1983) 33 Cal.3d 699, 707 [190 Cal.Rptr. 494, 660 P.2d 1168].)

■ Following the plain meaning of the statute is supported by the strong public policy frequently expressed favoring confidentiality of peer review committee proceedings. The establishment of peer review committees is required by Health and Safety Code section 32128. This section requires that the hospital governing body implement committees composed of its medical staff. The committees' responsibilities include the assessment of physicians applying for staff privileges and the ongoing review of performance and competence of those physicians currently on the staff. The code section further requires that these committees perform reviews in accordance with minimum standards promulgated by the Joint Commission on Accreditation of Hospitals. The author of a law review article in Comment (1984) 24 Santa Clara Law Review 661, 670, accurately describes the purpose of the peer review system: "As these requirements indicate, the underlying purpose of the peer review system is to promote an elevated standard of patient care. These committees perform investigations of physicians applying for staff privileges, establish standards and procedures for patient care, audit each surgery performed, and investigate discrepancies between

preoperative and postoperative diagnoses. The committees compile records and evaluations and engage in frank discussions about the performance and competence of their peers. Should the committee find a peer to be incompetent, a report and recommendation is made to administrators, who may then take action to revoke, limit, or deny medical staff privileges." (Fns. omitted.)

"There is a strong public interest in supporting, encouraging and protecting effective medical peer review programs and activities." (*Clarke* v. *Hoek* (1985) 174 Cal.App.3d 208, 220 [219 Cal.Rptr. 845].) As was observed in *Matchett* v. *Superior Court* (1974) 40 Cal.App.3d 623, 628 [115 Cal.Rptr. 317]:

"When medical staff committees bear delegated responsibility for the competence of staff practitioners, the quality of in-hospital medical care depends heavily upon the committee members' frankness in evaluating their associates' medical skills and their objectivity in regulating staff privileges." (See also *Brown* v. *Superior Court* (1985) 168 Cal.App.3d 489, 501 [214 Cal.Rptr. 266].)

Moreover, the legislative purpose of section 1157 is effectuated by protecting from discovery medical staff committee records and proceedings in damage actions such as the present one. Section 1157 was enacted in 1968 in response to the decision in *Kenney* v. *Superior Court* (1967) 255 Cal.App.2d 106 [63 Cal.Rptr. 84]. (See *West Covina Hospital* v. *Superior Court, supra,* 41 Cal.3d at p. 853, citing *Matchett* v. *Superior Court, supra,* 40 Cal.App.3d 623.) In *Kenney* the court upheld the trial court's order of production of hospital committee records either concerning any disciplinary proceedings or pertaining to the hospital staff privileges of a particular physician who was the defendant in a malpractice action. (*Kenney* v. *Superior Court, supra,* 255 Cal.App.2d at p. 109.) Section 1157, passed the next year, bars such discovery.

The court in *Matchett* v. *Superior Court, supra,* 40 Cal.App.3d at pages 628-630, explained: "[M]edical staff committees bear delegated responsibility for the competence of staff practitioners, . . . Although composed of volunteer professionals, these committees are affected with a strong element of public interest.

"California law recognizes this public interest by endowing the practitioner-members of hospital staff committees with a measure of immunity from damage claims arising from committee activities. (Civ. Code, § 43.7; [citation].) Evidence Code section 1157 expresses a legislative judgment that the public interest in medical staff candor extends beyond damage immuni-

ty and requires a degree of confidentiality. . . . Section 1157 was enacted upon the theory that external access to peer review investigations conducted by staff committees stifles candor and inhibits objectivity. It evinces a legislative judgment that the quality of in-hospital medical practice will be elevated by armoring staff inquiries with a measure of confidentiality.

"This confidentiality exacts a social cost because it impairs malpractice plaintiffs' access to evidence. . . . It embraces the goal of medical staff candor at the cost of impairing plaintiffs' access to evidence." (Fns. omitted.)

Candid and frank participation in peer review proceedings is encouraged by assuring peer review activities will not be put to adverse use in a damage action. Participation in peer review would be inhibited if a committee member's comments could be discovered in a damage action against a committee member or others. In *Brown* v. *Superior Court, supra,* 168 Cal.App.3d at page 501, the court stated: "The Legislature must have sought to impose confidentiality on committee proceedings in order to allow committee members to be able to admit and thereafter deal with the faults of staff members without risking an adverse impact from the admission."

The inhibiting effect on candor and frankness of permitting discovery of what occurred at peer review committee meetings in damage actions by physicians against committee members or others is no less severe than in permitting such discovery in malpractice actions. Therefore, the policies reflected in section 1157 apply with equal, if not greater, force to damage actions by physicians. Obviously the consequences to the individual committee member where a doctor seeks to attain or retain staff privileges is far less severe and inhibiting than is a suit for damages, particularly where a committee member is or may be named as a defendant. The disincentive to full and frank participation in committee activities is much greater from the threat of disclosure in damage actions of any type than in mandate proceedings where the worst that can happen is the reversal of the hospital's staff privileges decision.

Dr. Kaye asserts the Legislature intended the discovery bar to apply only in malpractice actions and not in any action by a physician involving a claim of wrongful interference with his staff privileges. In support of his construction allowing discovery, Dr. Kaye argues that because Civil Code section 43.7, subdivision (b) does not immunize committee members acting

with malice, section 1157 must be construed to permit discovery in a lawsuit that alleges malicious conduct by some or all committee members.[4]

The essence of Dr. Kaye's argument is that it is an illogical result for a statute specifically to exclude from immunity malicious conduct of a peer review committee member and at the same time impede discovery of evidence of that conduct. Although Dr. Kaye's construction arguably points to an inconsistency, it is nonetheless contrary to the plain language of the statute as well as the legislative intent in enacting section 1157. The statute expressly provides that the exception to the bar on discovery applies only "to any person requesting hospital staff privileges." This plain language may not be avoided to achieve what some might deem a more equitable result or to resolve what might appear superficially to constitute an inconsistency. Further, even assuming there is some inconsistency between the two statutes, they are not irreconcilable. The Legislature may choose for policy reasons to restrict access to certain evidence even though that evidence might be relevant to a cause of action expressly permitted.

■ As the court stated in *Matchett*: "Section 1157 represents a legislative choice between competing public concerns. It embraces the goal of medical staff candor at the cost of impairing plaintiffs' access to evidence." (*Matchett, supra,* 40 Cal.App.3d at p. 629.) We recognize *Matchett* dealt with a malpractice action. However, as previously noted, the policy considerations underlying section 1157 apply with equal, if not greater, force to damage actions by physicians. We also recognize that application of the immunity in an action by a physician claiming malicious conduct on the part of the peer review committee might constitute a greater impairment on the physician's ability to pursue his/her action than that imposed on a plaintiff alleging medical malpractice. Unlike the plaintiff alleging malpractice, in the present case a major potential source of direct evidence of claimed improprieties will lie in the minutes of the meetings and other such documents. (See *Roseville Community Hospital* v. *Superior Court, supra,* 70 Cal.App.3d at p. 816.) The Legislature presumably balanced this potential burden against the public interest in promoting candor and frankness at peer review committee meetings and concluded the latter outweighed the

---

[4] Civil Code section 43.7, subdivision (b) provides in relevant part: "There shall be no monetary liability on the part of, and no cause of action for damages shall arise against, . . . any member of any peer review committee whose purpose is to review the quality of medical . . . services rendered by physicians and surgeons, . . . which committee is composed chiefly of physicians and surgeons, . . . for any act or proceeding undertaken or performed in reviewing the quality of medical . . . services rendered by physicians and surgeons . . . if the professional society, committee, or board member acts without malice, has made a reasonable effort to obtain the facts of the matter as to which he, she, or it acts, and acts in reasonable belief that the action taken by him, her, or it is warranted by the facts known to him, her, or it after the reasonable effort to obtain facts."

former. (*Matchett, supra,* 40 Cal.App.3d at p. 629.) "[T]here is no justification for courts to strike a different balance." (*West Covina, supra,* 41 Cal.3d at p. 855, fn. omitted.) It is not our function as a judicial body to reweigh the competing interests considered by the Legislature based on our perception of which consideration may or may not be more important.

The coexistence of a cause of action under Civil Code section 47.3 and a privilege against discovering certain information that might be relevant to enforcing that cause of action does not create a legitimate basis for contending the Legislature did not intend the privilege to apply or that the privilege is otherwise modified or abrogated. Section 1157 was enacted to promote the above public policies. To interpret the narrow exception to section 1157 to broaden discovery, as Dr. Kaye suggests, is contrary to the "manifest reason and the obvious design of the law." (*County of Los Angeles* v. *Frisbie, supra,* 19 Cal.2d at p. 639.)

Finally, we are unmoved by Dr. Kaye's assertion that application of the privilege in the present case results in the establishment of "a Star Chamber proceeding that would be entirely exempt from scrutiny even by the persons being reviewed."

"The unrestricted nature of the discussion is not to insulate participants from the scrutiny of the staff members being reviewed; the exceptions in section 1157 do not prohibit discovery by 'any person requesting hospital staff privileges.'" (*Brown* v. *Superior Court, supra,* 168 Cal.App.3d at p. 501.) The exception contained in subdivision (c) allows for meaningful judicial review by permitting discovery by a doctor in an action for administrative mandamus.[5]

## II*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

---

[5] We are not presently called on to determine whether evidence discovered in a successful petition for administrative mandamus would be admissible should a damage action subsequently be filed.

*See footnote, *ante,* page 1477.

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order granting Dr. Kaye's pretrial discovery motion and enter a new order denying said motion. Costs to petitioners.

Martin, Acting P. J., and Brown (G. A.), J.,* concurred.

The petition of real parties in interest for review by the Supreme Court was denied February 21, 1989.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.