[No. H011221. Sixth Dist. Nov. 16, 1993.]

KATHRYN ANN WILLITS, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
HEALTH DIMENSIONS, INC., Real Party in Interest.

**COUNSEL**

Engle & Gertler and Jonathan E. Gertler for Petitioner.

No appearance for Respondent.

Ropers, Majeski, Kohn, Bentley, Wagner & Kane, Mark G. Bonino, Laura L. Reidenbach and Todd A. Roberts for Real Party in Interest.

**OPINION**

**PREMO, J.**—This petition for a writ of mandate raises an issue of first impression regarding application of the discovery privilege under Evidence Code section 1157, subdivision (a), which protects "proceedings" and "records" of a hospital staff committee "having the responsibility of evaluation and improvement of the quality of care rendered in the hospital . . . ." We hold that the statute applies to a hospital employee's suit for damages.

### FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Kathryn Ann Willits was employed as a critical care nurse at San Jose Medical Center (hereafter, SJMC) from November 1990 until October 1991. On March 15, 1991, petitioner withdrew blood from an AIDS patient. While transferring the blood from a syringe into a blood collection tube, petitioner allegedly incurred a needle stick injury. Thereafter, petitioner tested HIV positive.

Petitioner filed suit in March 1992, asserting causes of action for negligence, products liability, and breach of express and implied warranties. Petitioner named as defendant, among others, Health Dimensions, Inc. (hereafter, HDI), a separate entity that managed SJMC at the time of the alleged needle stick.

Petitioner sought discovery from HDI of documents pertaining to: (1) the needle stick incident itself, including reports, memoranda, correspondence, statements, and medical records; (2) the AIDS patient whose blood was involved in the incident; (3) HDI's and SJMC's purchase and use of the medical products involved in the incident; (4) employee training and education regarding needle stick incidents at SJMC and other HDI facilities; (5) the occurrence, reporting, prevention, and treatment of such incidents at SJMC and other HDI facilities; (6) the employment, training, and supervision of petitioner at SJMC; (7) rules, policies, and protocols applicable to

petitioner at SJMC; and (8) the corporate structure and management of HDI and SJMC and the relationship between the two entities.

As to documents concerning corporate structure and management and the relationship between HDI and SJMC, HDI responded that "[a]ll nonprivileged documents will be produced." HDI also promised to produce petitioner's canceled paychecks to the extent they were not attorney-client work product or otherwise privileged. But HDI maintained that the medical chart of the AIDS patient was protected by several statutory provisions, including Civil Code section 56 et seq., and Health and Safety Code section 199 et seq. And, as to every other request, HDI repeatedly objected that it "calls for matters that are protected by the attorney-client privilege, the work product rule, would constitute discovery of documents and information generated in anticipation of litigation [citations]; and *Evidence Code* §§ 1156, 1156.1, 1157, 1157.5, 1157.6, and 1157.7. Without waiving this objection, [HDI] will produce any relevant documents in its possession that are not privileged and which do not constitute attorney-client work product."

Petitioner moved to compel production. In an order entered March 19, 1993, the trial court granted petitioner's motion "except as to any documents protected by a privilege, as to which defendant shall comply with [Code of Civil Procedure section] 2031(f)(3) within 20 days hereof." The trial court then added a parenthetical statement that resulted in the instant petition for a writ of mandate: "(The court concurs with defendant that Evidence [Code section] 1157 applies to medical staff com[m]ittee activities and files, and precludes discovery of employee occupational safety or health reports by a hospital employee.)"

Apparently, HDI produced some documents in the two-month interim between the filing of the trial court's order and of this writ petition. But, according to the petition, HDI still refuses to produce "the majority" of the requested documents, asserting a privilege under Evidence Code section 1157, subdivision (a).

## DISCUSSION

We set out the full text of Evidence Code section 1157 (section 1157) in the margin.[1] Briefly, subdivision (a) provides: "Neither the proceedings nor the records of organized committees of medical . . . staffs in hospitals, or of

[1]"(a) Neither the proceedings nor the records of organized committees of medical, medical-dental, podiatric, registered dietitian, psychological, or veterinary staffs in hospitals, or of a peer review body, as defined in Section 805 of the Business and Professions Code, having the responsibility of evaluation and improvement of the quality of care rendered in the hospital,

a peer review body, . . . having the responsibility of evaluation and improvement of the quality of care rendered in the hospital . . . shall be subject to discovery." Subdivision (b) precludes forced testimony by a committee member as to matters discussed at a committee meeting. Subdivisions (c), (d), and (e) set forth exceptions, inapplicable here, to the privileges established in subdivisions (a) and (b).

Thus, by asserting the privilege under section 1157, subdivision (a), in response to petitioner's motion to compel, HDI maintained that most of the requested documents constituted "proceedings" or "records" of "organized committees" of SJMC "medical . . . staff[ ]," with such committees "having the responsibility of evaluation and improvement of the quality of care rendered" at SJMC. In support, HDI submitted the declaration of Robert G. Brueckner, president of SJMC. Brueckner explained that "[a] claim of a nurse for an injury by a needlestick involving a patient who was known to be HIV positive and where it is claimed that the medical appliances were defective or deficient, or where there is a claim that the nurse was inadequately trained to draw blood from an arterial line or to inject blood into a laboratory tube would be the subject of concern to one or more [SJMC] committees. [SJMC] does not distinguish between injuries to patients, to visitors or to employees." Brueckner described the functions of SJMC's life safety management program, life safety management committee, quality performance committee, infection control committee, product purchase review committee, and product review committee.

---

or for that peer review body, or medical or dental review or dental hygienist review or chiropractic review or podiatric review or registered dietitian review or veterinary review committees of local medical, dental, dental hygienist, podiatric, dietetic, veterinary, or chiropractic societies, or psychological review committees of state or local psychological associations or societies having the responsibility of evaluation and improvement of the quality of care, shall be subject to discovery.

"(b) Except as hereinafter provided, no person in attendance at a meeting of any of those committees shall be required to testify as to what transpired at that meeting.

"(c) The prohibition relating to discovery or testimony does not apply to the statements made by any person in attendance at a meeting of any of those committees who is a party to an action or proceeding the subject matter of which was reviewed at that meeting, or to any person requesting hospital staff privileges, or in any action against an insurance carrier alleging bad faith by the carrier in refusing to accept a settlement offer within the policy limits.

"(d) The prohibitions in this section do not apply to medical, dental, dental hygienist, podiatric, dietetic, psychological, veterinary, or chiropractic society committees that exceed 10 percent of the membership of the society, nor to any of those committees if any person serves upon the committee when his or her own conduct or practice is being reviewed.

"(e) The amendments made to this section by Chapter 1081 of the Statutes of 1983, or at the 1985 portion of the 1985-86 Regular Session of the Legislature, or at the 1990 portion of the 1989-1990 Regular Session of the Legislature, do not exclude the discovery or use of relevant evidence in a criminal action." (Evid. Code, § 1157.)

Section 1157 was enacted by the Legislature in 1968 and first interpreted by the Third Appellate District in *Matchett* v. *Superior Court* (1974) 40 Cal.App.3d 623 [115 Cal.Rptr. 317]. Plaintiff Matchett sought pretrial discovery from defendant hospital of hospital and staff records pertaining to defendant doctor's selection and retention. When the trial court refused to compel the hospital to produce the documents based on section 1157, Matchett petitioned for a writ of mandate. Matchett pointed to what is now subdivision (c) of section 1157, providing that the "prohibition relating to discovery or testimony does not apply . . . to any person requesting hospital staff privileges."

The Third Appellate District acknowledged that section 1157 was enacted "in apparent response to this court's decision in *Kenney* v. *Superior Court* (1967) 255 Cal.App.2d 106 [63 Cal.Rptr. 84]. There we sustained a malpractice plaintiff's claim to discovery of hospital staff records which might reveal information bearing upon the competence of the defendant doctor. In *Kenney* only the doctor was a defendant, not the hospital. Nevertheless, a public policy question was raised by malpractice plaintiffs' access to medical files revealing committee investigations and appraisals of their peers. Section 1157 was enacted upon the theory that external access to peer investigations conducted by staff committees stifles candor and inhibits objectivity. It evinces a legislative judgment that the quality of in-hospital medical practice will be elevated by armoring staff inquiries with a measure of confidentiality." (*Matchett* v. *Superior Court*, *supra*, 40 Cal.App.3d at p. 629, fn. omitted.)

At the same time, the court recognized that "[t]his confidentiality exacts a social cost because it impairs malpractice plaintiffs' access to evidence. In a damage suit for in-hospital malpractice against doctor or hospital or both, unavailability of recorded evidence of incompetence might seriously jeopardize or even prevent the plaintiff's recovery. Section 1157 represents a legislative choice between competing public concerns. It embraces the goal of medical staff candor at the cost of impairing plaintiffs' access to evidence." (*Matchett* v. *Superior Court*, *supra*, 40 Cal.App.3d at p. 629, fn. omitted.)

The *Matchett* court determined that the exception for "any person requesting hospital staff privileges" applied to "suits by doctors claiming wrongful or arbitrary exclusion from hospital staff privileges" and not to medical malpractice suits. (*Matchett* v. *Superior Court*, *supra*, 40 Cal.App.3d at pp. 629-630.) Noting that ". . . a court must have before it facts which allow it to match the staff committee's mission and function against the specifications of the statute," the Third Appellate District examined the functions of

the hospital's credentials committee, records committee, tissue committee, and executive committee. (*Id.* at p. 627.) The court found that each committee met statutory specifications and, therefore, that the committees' records and proceedings reflecting inquiry into the qualifications of defendant doctor were immune from discovery under section 1157.

But the Third Appellate District concluded that ". . . the trial court's order was too sweeping. The medical staff immunity described in section 1157 extends to, first, the proceedings, and second, the records of the described staff committees. It does not embrace the files of the hospital administration (as distinguished from staff). The trial court should have inquired into the existence of a hospital administration file concerning the doctor and, if such a file existed, should have permitted its inspection, excluding any portions which reflected the proceedings of staff committees conforming to the specifications of the immunity statute." (*Matchett* v. *Superior Court, supra,* 40 Cal.App.3d at p. 628.)

*Matchett* was the "seminal case" (*People* v. *Superior Court (Memorial Medical Center)* (1991) 234 Cal.App.3d 363, 372 [286 Cal.Rptr. 478]) and remains the "leading case" (*County of Los Angeles* v. *Superior Court* (1990) 224 Cal.App.3d 1446, 1452 [274 Cal.Rptr. 712]) on section 1157. It has been cited and quoted extensively by the California Supreme Court (*Alexander* v. *Superior Court* (1993) 5 Cal.4th 1218 [23 Cal.Rptr.2d 397, 859 P.2d 96]; *West Covina Hospital* v. *Superior Court* (1986) 41 Cal.3d 846, 852-854 [226 Cal.Rptr. 132, 718 P.2d 119, 60 A.L.R.4th 1257]) and by the Court of Appeal (see *Cedars-Sinai Medical Center* v. *Superior Court* (1993) 12 Cal.App.4th 579, 583 [16 Cal.Rptr.2d 253], for a list of cases decided under § 1157). While further delineating the parameters of section 1157, the post-*Matchett* decisions have deviated little from the Third Appellate District's analytical framework.

First, the courts have examined whether the legislative intent underlying section 1157, as expressed in *Matchett,* would be furthered by allowing or disallowing discovery. As the court observed in *Cedars-Sinai Medical Center* v. *Superior Court, supra,* 12 Cal.App.4th at page 585: "Above all, the intention of the Legislature must be ascertained and followed. (*People* v. *Superior Court* (1969) 70 Cal.2d 123, 132 . . . .) '[R]egard is to be had not so much to the exact phraseology in which the intent has been expressed as to the general tenor and scope of the entire scheme embodied in the enactments.' (*County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 639 . . . .)"

In *Brown* v. *Superior Court* (1985) 168 Cal.App.3d 489 [214 Cal.Rptr. 266], plaintiff asserted a cause of action for "hospital negligence," based

upon *Elam* v. *College Park Hospital* (1982) 132 Cal.App.3d 332, 346 [183 Cal.Rptr. 156], in which the Supreme Court held that a hospital may be liable for "corporate negligence" for "negligently screening the competency of its medical staff to insure the adequacy of medical care rendered to patients at its facility." Plaintiff sought discovery not of the content of committee discussions but simply of the fact whether defendant hospital had evaluated its doctors and, particularly, defendant doctor. The court allowed the discovery, reasoning that "[t]his result stimulates the evaluation process without permitting penetration of the content of committee discussions. . . . [¶] . . . [P]ermitting a 'yes' or 'no' answer to a question directed to the fact of evaluation only encourages hospitals to conduct evaluations." (*Brown* v. *Superior Court, supra*, 168 Cal.App.3d at p. 501.) Thus, the ruling furthered the Legislature's intent to encourage evaluations by making their content confidential.

But in *Cedars-Sinai Medical Center* v. *Superior Court, supra*, plaintiffs went one step further, seeking discovery of the identities of committee members who had evaluated the obstetrical privileges of defendant doctors. Because the Supreme Court held in *West Covina Hospital* v. *Superior Court, supra*, 41 Cal.3d 846, that the prohibition in section 1157, subdivision (b), against forced testimony by a doctor did not preclude voluntary testimony, plaintiffs argued that they should at least have access to names. The court disagreed, believing that "[i]t would be an incongruous result if the statute protected the work product of the review committee but exposed the identity of the evaluating committee members whose candor the statute seeks to promote." (*Cedars-Sinai Medical Center* v. *Superior Court, supra*, 12 Cal.App.4th at p. 588.) The court "f[ou]nd this case controlled by the Legislature's determination that the public good requires confidentiality in medical staff evaluation proceedings. This public benefit outweighs [plaintiffs'] right to discover the identities sought here." (*Id.* at p. 589.)

And in *Alexander* v. *Superior Court, supra*, 5 Cal.4th 1218, the Supreme Court recently held that plaintiff could not obtain discovery from defendant hospital of defendant doctors' applications and reapplications for staff privileges, which were submitted to a hospital medical committee. (See also *Snell* v. *Superior Court* (1984) 158 Cal.App.3d 44 [204 Cal.Rptr. 200].) The court agreed with "legislative policy articulated" by the Florida Supreme Court in *Cruger* v. *Love* (Fla. 1992) 599 So.2d 111, 114: " 'Committee members and those providing information to the committee must be able to operate without fear of reprisal. Similarly, it is essential that doctors seeking hospital privileges disclose all pertinent information to the committee. Physicians who fear that information provided in an application might someday be used against them by a third party will be reluctant to fully detail matters

that the committee should consider.' " (*Alexander* v. *Superior Court*, *supra*, 5 Cal.4th at p. 1227.)

In *California Eye Institute* v. *Superior Court* (1989) 215 Cal.App.3d 1477 [264 Cal.Rptr. 83], plaintiff ophthalmologist sought damages allegedly resulting from the wrongful restriction of his staff privileges at defendant hospital. He sought discovery of documents from the medical staff executive committee that recommended the restriction. Like the malpractice plaintiff in *Matchett*, plaintiff doctor relied upon the exception in subdivision (c) for "any person requesting hospital staff privileges."

The court acknowledged that another district had allowed such discovery by a doctor in a suit for damages but pointed out that, in *Roseville Community Hospital* v. *Superior Court* (1977) 70 Cal.App.3d 809 [139 Cal.Rptr. 170], that district was not asked specifically to determine the applicability of the exception under subdivision (c) to a doctor's suit for damages. Asked specifically to decide the issue, the *California Eye Institute* court concluded that plaintiff was not a "person requesting hospital staff privileges" because the exception under subdivision (c) applied only in the context of administrative mandamus proceedings pertaining to staff privileges.

The *California Eye Institute* court "recognize[d] that application of the immunity in an action by a physician claiming malicious conduct on the part of the peer review committee might constitute a greater impairment on the physician's ability to pursue his/her action than that imposed on a plaintiff alleging medical malpractice. Unlike the plaintiff alleging malpractice, in the present case a major potential source of direct evidence of claimed improprieties will lie in the minutes of the meetings and other such documents." (*California Eye Institute* v. *Superior Court*, *supra*, 215 Cal.App.3d at p. 1485.)

But the *California Eye Institute* court also recognized the legislative intent to encourage candor and frankness in peer review. Allowing doctors to obtain discovery in damage actions would inhibit that goal no less than allowing malpractice plaintiffs to obtain discovery. In fact, the inhibition may be more pronounced. "Obviously the consequences to the individual committee member where a doctor seeks to attain or retain staff privileges is far less severe and inhibiting than is a suit for damages, particularly where a committee member is or may be named as a defendant. The disincentive to full and frank participation in committee activities is much greater from the threat of disclosure in damage actions of any type than in mandate proceedings where the worst that can happen is the reversal of the hospital's staff privileges decision." (*California Eye Institute* v. *Superior Court*, *supra*, 215

Cal.App.3d at p. 1484; see also *St. Francis Memorial Hospital* v. *Superior Court* (1988) 205 Cal.App.3d 438 [252 Cal.Rptr. 380] [in suit for damages arising out of interruption of plaintiff doctor's practice while hospital instituted new procedures, plaintiff was denied discovery of documents pertaining to committee's evaluation of procedures].)

In *Mt. Diablo Hospital Dist.* v. *Superior Court* (1986) 183 Cal.App.3d 30 [227 Cal.Rptr. 790], plaintiff husband received a new treatment for chronic back pain, involving injection of the drug chymopapain, at defendant hospital. The hospital had established the ad hoc chymopapain committee to evaluate and approve standards for granting physician privileges to administer the new treatment. The standards adopted by the committee were then approved by four other medical staff committees. Plaintiffs sought discovery of the standards, which defendant hospital produced, as well as the minutes of the five committees approving the standards, which the hospital claimed to be privileged under section 1157. Plaintiffs argued that "section 1157 applies only to 'peer review' of the past performance of human beings and not to 'product review,' and that they are entitled to know what investigation, if any, the Hospital conducted to determine the safety and efficacy of the drug [chymopapain] prior to allowing doctors to use it at the Hospital." (183 Cal.App.3d at p. 34, fn. omitted.)

The *Mt. Diablo Hospital Dist.* court disagreed, declaring that ". . . the contention here that the statute protects only evaluation of the past performance of human beings is untenable. The statute does not so provide. The terms 'evaluation and improvement of the quality of care rendered in the hospital' cannot reasonably be construed to exclude consideration of standards for new physician treatments and drug care." (*Mt. Diablo Hospital Dist.* v. *Superior Court, supra*, 183 Cal.App.3d at p. 34.) Thus, the legislative intent to encourage full and candid evaluation is the same, whether related to the competence of doctors or to the use of treatments and drugs.

Second, the post-*Matchett* decisions have continued to distinguish committee "proceedings" and "records," which are protected by section 1157, from administrative matters, which are not. (See, e.g., *Saddleback Community Hospital* v. *Superior Court* (1984) 158 Cal.App.3d 206, 208-209 [204 Cal.Rptr. 598]; *County of Kern* v. *Superior Court* (1978) 82 Cal.App.3d 396, 401-402 [147 Cal.Rptr. 248]; *Schulz* v. *Superior Court* (1977) 66 Cal.App.3d 440, 446 [136 Cal.Rptr. 67].)

As the Supreme Court explained in *Alexander* v. *Superior Court, supra*, 5 Cal.4th at page 1224, "Hospitals have a dual structure. First, an administrative governing body (often comprised of persons other than health care

professionals) takes ultimate responsibility for the quality and performance of the hospital. Second, an 'organized medical staff' entity (composed of health care professionals) has responsibility for providing medical services, and is 'responsible to the governing body for the adequacy and quality of the medical care rendered to patients in the hospital.' (Cal. Code Regs., tit. 22, § 70703, subd. (a); see also *id.*, § 70701(a)(1)(F); Bus. & Prof. Code, § 805.05.) [¶] The medical staff entity is required to perform various functions (e.g., 'executive review, credentialing, . . . utilization review, infection control') through one or more committees. (Cal. Code Regs., tit. 22, § 70703, subd. (d).)"

In *Santa Rosa Memorial Hospital* v. *Superior Court* (1985) 174 Cal.App.3d 711 [220 Cal.Rptr. 236], plaintiff sought to compel answers to questions propounded at the deposition of a nurse epidemiologist who was a member of the infection control committee at defendant hospital. On writ, the hospital maintained "that section 1157 provides a 'blanket immunity' from discovery of all records and proceedings of hospital medical staff committees having the responsibility of evaluation and improvement of the quality of care rendered in the hospital. It argues that the infection control committee is such a committee, that the deposition questions at issue sought the committee's 'records and proceedings,' and that, consequently, the trial court erred in granting the motion to compel." (*Id.* at pp. 716-717.)

After examining the functions of defendant hospital's infection control committee, the court concluded that it was a "medical staff committee" within the meaning of the statute. (*Santa Rosa Memorial Hospital* v. *Superior Court, supra,* 174 Cal.App.3d at p. 719.) But the court noted increasing concern that hospitals were misusing section 1157 in order to frustrate discovery. (See, e.g., *Brown* v. *Superior Court, supra,* 168 Cal.App.3d at p. 495 [The trial judge said: "I think it's a little on the outrageous side that all of the hospitals are no longer holding [information] in administrative files and putting everything in those committees and everything is going there, but 1157 says that is privilege. . . . There is no question in the court's mind . . . that the hospitals are abusing 1157 . . . ."].)

The *Santa Rosa Memorial Hospital* court stressed that "Section 1157 'applies *only* to records of and proceedings before medical investigative committees.' [Citation.] Information developed or obtained by hospital administrators or others which does not derive from an investigation into the quality of care or the evaluation thereof by a medical staff committee, and which does not disclose the investigative and evaluative activities of such a committee, is not rendered immune from discovery under section 1157 merely because it is later placed in the possession of a medical staff

committee or made known to committee members; and this may be so even if the information in question may be relevant in a general way to the investigative and evaluative functions of the committee. Just as ' "a party cannot [under the attorney-client privilege] conceal a fact merely by revealing it to his lawyer" ' [citations], a hospital cannot render its files immune from discovery simply by disclosing them to a medical staff committee. Hospital administrators cannot, in other words, evade their concurrent duty to insure the adequacy of medical care provided patients at their facility—the duty articulated in *Elam*—simply by purporting to have delegated that entire responsibility to medical staff committees. The responsibilities of hospital administrators pertaining to the quality of in-hospital care will, of course, usually be related to the similar duties of medical staff committees. Nonetheless, the responsibilities of hospital administrators are independent of those resting with medical staff committees." (*Santa Rosa Memorial Hospital* v. *Superior Court, supra*, 174 Cal.App.3d at p. 724.)

"With respect to infection control specifically," the *Santa Rosa Memorial Hospital* court noted that the California Administrative Code, the Joint Commission on Accreditation of Hospitals manual, and the American Hospital Association guidelines "all clearly demonstrate that the hospital administration has independent duties and responsibilities apart from those of an infection control committee. Essentially, the hospital as a corporate entity must establish and implement an adequate infection control program, while the duty of the committee is to monitor the effectiveness of that program." (*Santa Rosa Memorial Hospital* v. *Superior Court, supra*, 174 Cal.App.3d at p. 725.) "The sharing of such responsibility does not bring hospital administrators within the protections of [section 1157] which, by its terms, only applies to the records and proceedings of medical staff committees." (*Id.* at p. 726.)

■ With *Matchett* and its progeny firmly in mind, we now turn to the instant case. Petitioner maintains that section 1157 is not aimed at suits by hospital employees. Rather, as the *Matchett* court declared, it "is aimed directly at malpractice actions in which a present or former hospital staff doctor is a defendant." (*Matchett* v. *Superior Court, supra*, 40 Cal.App.3d at p. 629.) According to petitioner, the reference in subdivision (a) to "the quality of care rendered in the hospital" is the statute's "key term . . . which clearly applies only to services to *patients*."

Petitioner contends the legislative intent underlying other statutes outweighs the intent expressed in section 1157. She points to Labor Code section 6401.7, providing that "[e]very employer shall establish, implement, and maintain an effective injury prevention program . . ."; Labor Code

sections 6313-6314, concerning the duty and authority of the Division of Occupational Safety and Health to investigate industrial accidents; and Health and Safety Code sections 429.13-429.15, addressing the danger to health care workers and professionals from bloodborne diseases and establishing a program to improve medical devices.

While we surmise that petitioner is entitled to more documents than she has received thus far, we conclude that section 1157 applies to this case and that none of the statutes cited by petitioner overrides the section 1157 privilege.

First, we disagree with petitioner's assertion that injuries to hospital employees are outside the statutory ambit of "the quality of care rendered in the hospital . . . ." Surely, the risk of injuries to health care workers threatens the entire health care system. Were the risk excessive, we think it not unreasonable to believe that, at some point, some workers would refuse to perform some procedures, leaving some patients with substandard medical care. Moreover, some hazards endanger workers, patients, and visitors alike. In fact, Brueckner states in his declaration that "[SJMC] does not distinguish between injuries to patients, to visitors or to employees" and that the Life Safety Committee seeks "to identify real and potential areas of exposure to injury, to patients, visitors and employees."

Second, although the Legislature may not have contemplated suits by hospital employees when section 1157 was enacted, the legislative intent readily encompasses such suits. Echoing *Matchett*, the court observed in *People* v. *Superior Court (Memorial Medical Center)*, *supra*, 234 Cal.App.3d at page 373, that "section 1157 is an attempt to prevent a chilling effect on the accurate evaluation of health care facilities which would lead to a decline in the quality of health care in California. [¶] In balancing a plaintiff's concern in obtaining access to . . . committee records versus the public interest in a high-quality health care system, the Legislature drew a distinction between the rights of the individual, and the rights of the many. The confidentiality bestowed by section 1157, then, has its price; it denies a plaintiff access to information which could prevent her from recovering . . . . Yet it is clearly the judgment of the Legislature that this price is worth paying in order to protect the prospective health of the public as a whole."

Just as candor and frankness are essential to effective peer review (*California Eye Institute* v. *Superior Court, supra*, 215 Cal.App.3d 1477) and to effective treatment and product review (*Mt. Diablo Hospital Dist.* v. *Superior Court, supra*, 183 Cal.App.3d 30), so also are they essential to the review of

health and safety matters by hospital staff committees. The threat of later disclosure in damage actions would be a powerful disincentive to serve on such committees, to uninhibited participation by those willing to serve, and to full and candid investigation of incidents such as needle stick injuries. The same legislative choice pertains: A few hospital employees must be denied discovery in order to protect the health of all health care workers and of the public as a whole.

Third, application of the section 1157 privilege to this case enhances, rather than conflicts with, the legislative intent behind the other statutes cited by petitioner. For example, Health and Safety Code section 429.14 states that "[i]t is the intent of the Legislature in enacting this article to reduce exposure of health care personnel to deadly, bloodborne diseases by encouraging the development and use of medical devices that are designed to assure worker safety as well as the safety of patients and the efficacy of the device." And Health and Safety Code section 429.15, subdivision (a)(2), requires the Department of Health Services to "[c]ollect and evaluate information ,from health facilities which are using medical devices which have been redesigned to enhance worker safety."

Thus, in Health and Safety Code section 429.14, the Legislature sought to protect health care personnel from occupational injuries and illnesses and, we note, recognized a link between worker safety and patient safety. In Health and Safety Code section 429.15, the Legislature sought to accomplish that goal by instituting a program to evaluate and improve medical devices. Undoubtedly, that goal is more readily achieved if hospital staff committees may candidly assess medical devices, and accidents involving such devices, under the mantle of confidentiality provided by section 1157.

In sum, we hold that section 1157, subdivision (a), applies to this action for damages by a hospital employee. But we caution that our decision should be read narrowly so as not to conflict with other judicial pronouncements on section 1157. For example, while we hold that the other statutes cited by petitioner do not override the section 1157 privilege for the "proceedings" and "records" of hospital staff committees, we fully endorse the distinction that *Matchett, Santa Rosa Memorial Hospital*, and other cases have consistently drawn between administrative functions/records and committee functions/records.

Santa Rosa Memorial Hospital could not avoid discovery of documents reflecting the administration's independent duties by delegating such duties to committees or by placing relevant documents in committee files. "Essentially, the hospital as a corporate entity must establish and implement an

adequate infection control program, while the duty of the committee is to monitor the effectiveness of that program." (*Santa Rosa Memorial Hospital* v. *Superior Court, supra,* 174 Cal.App.3d at p. 725.) So also HDI cannot avoid discovery of materials related to its independent duties, such as those imposed by the Labor Code and the Health and Safety Code, by delegating such duties to committees or by placing relevant documents in committee files.

As noted above, we discern that HDI has refused to produce not only documents that enjoy the statutory protection but also some that do not. In this case, as in *Santa Rosa Memorial Hospital,* "the trial court granted [plaintiff's] motion to compel answers without sufficient inquiry into relevant considerations," such as the precise nature of the documents encompassed by the court's parenthetical statement. (*Santa Rosa Memorial Hospital* v. *Superior Court, supra,* 174 Cal.App.3d at p. 728.)

Like the appellate court in *Saddleback Community Hospital* v. *Superior Court, supra,* 158 Cal.App.3d at page 209, "[w]e do not (and cannot) decide the discoverability of any particular items requested. 'As further issues of [immunity,] privilege and privacy arise through implementation of the court's order [to produce], the trial court will be in the best position to assess the competing interests and to exercise its broad discretion in discovery matters in accordance with applicable principles.' [Citation.]" Therefore, we shall remand for further proceedings under the helpful guidelines offered by the *Santa Rosa Memorial Hospital* court.

■ "[A] hospital cannot receive the benefit of section 1157 if it refuses to bear the associated burden of demonstrating why the information claimed to be immune should be deemed a record or proceeding of a medical staff committee. [¶] Certain types of information are so clearly within the exclusive sphere of a protected medical staff committee—such as, for example, the infection control committee's self-generated analysis of the adequacy of work performed by hospital staff members engaged in infection control or of procedures utilized by them—that section 1157 can be found applicable without extensive judicial inquiry. On the other hand, when the information sought to be discovered relates to a matter that is not obviously within the sole purview of a protected committee—such as, for example, the nature of the infection control program administratively established in the hospital— the burden of showing that it is protected by section 1157 cannot be sustained except upon particularized judicial inquiry. . . . Thus, when application of the statute to disputed discovery is not facially apparent, as will often be the case, the burden on the party resisting discovery ordinarily cannot be sustained except upon judicial inquiry into the pertinent facts at an

*in camera* hearing. [Citations.] If it is revealed at such a hearing that only portions of a report or other document are derived from the work of a protected committee the court may order such portions excised and compel disclosure of the remainder." (*Santa Rosa Memorial Hospital* v. *Superior Court, supra,* 174 Cal.App.3d at pp. 727-728.)

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its order of March 19, 1993, and to reconsider petitioner's discovery motion consistent with the views and procedures set forth in this opinion.

Cottle, P. J., and Wunderlich, J., concurred.