12 Cal.App.4th 579 (1993)
16 Cal. Rptr.2d 253
CEDARS-SINAI MEDICAL CENTER, Petitioner,
v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; DANIEL SCHWARTZ, a Minor, etc., et al., Real Parties in Interest.
Docket No. B066187.
Court of Appeals of California, Second District, Division Three.
January 14, 1993.
*580 COUNSEL
Rushfeldt, Shelley & Drake, Horvitz & Levy, David M. Axelrad and David S. Ettinger for Petitioner.
*581 Christine R. Hall, Catherine I. Hanson and Kimberly S. Davenport as Amici Curiae on behalf of Petitioner.
No appearance for Respondent.
Stanley K. Jacobs and Mark Allen Kleiman for Real Parties in Interest.
OPINION
KLEIN, P.J.
Petitioner Cedars-Sinai Medical Center (Cedars) seeks a writ of mandate directing the trial court to vacate its order denying Cedars's request for a protective order. The trial court's order permitted real parties in interest Hendel Schwartz, Eric Schwartz, and Daniel Schwartz, by and through his guardian, Hendel Schwartz, (collectively, the Schwartzes) to discover in the course of their medical malpractice action the identities of the medical staff review committee members who had evaluated the obstetrical privileges held by the defendant physicians at Cedars.
The issue presented is whether Evidence Code section 1157 (section 1157) precludes such discovery.[1]
We grant Cedars's petition for writ of mandate because we conclude section 1157 embodies the Legislature's finding the public good is best served where medical staff review committees evaluate staff physicians in confidence. Therefore, the identities of such evaluators may not be discovered even though this may limit the ability of an individual plaintiff to discover relevant and admissible information. Accordingly, the trial court should have granted Cedars's request for a protective order.

FACTUAL AND PROCEDURAL BACKGROUND
In a complaint filed December 15, 1989, alleging medical malpractice the Schwartzes sued Cedars and two obstetricians for injuries sustained by *582 Daniel at birth. In the course of trial preparation, the Schwartzes served upon Cedars interrogatories which sought to discover the identity of "each member of any organized committee of [Cedars's] medical staff who has reviewed any aspect of the obstetrical privileges held by" the defendant physicians.
These interrogatories were intended to lead to discoverable information regarding the Schwartzes' cause of action against Cedars for damages pursuant to Elam v. College Park Hospital (1982) 132 Cal. App.3d 332, 346 [183 Cal. Rptr. 156]. Elam held a hospital may be liable for the negligent selection, review and retention of a doctor on its medical staff.
Cedars moved for a protective order relying on section 1157, subdivision (a).
The Schwartzes resisted Cedars's assertion of the discovery privilege contending case law implied the privilege did not extend to the identities of the members of hospital review staff because such members may waive the privilege and voluntarily testify in a medical malpractice action. (West Covina Hospital v. Superior Court (1986) 41 Cal.3d 846 [226 Cal. Rptr. 132, 718 P.2d 119, 60 A.L.R.4th 1257].) The Schwartzes also argued section 1157 protects proceedings and records of review committees, not the identities of evaluating medical staff committee members. They claimed such disclosure would impose no burden on the physicians so identified because they have an absolute right to refuse to testify.
The trial court denied Cedars's motion. It ruled the privilege of section 1157 extends "`only to records of and proceedings before medical investigative committees.' Schultz v. Superior Court, 66 [Cal. App.3d 440] at 446 [136 Cal. Rptr. 67].... [¶]... [¶] There is nothing in the statute that [precludes] discovery of the names of committee members only the proceedings themselves."
This court summarily denied Cedars's petition for writ relief. Thereafter, the Supreme Court granted Cedars's petition for review and transferred the matter to this court with directions to vacate our previous order and to issue an alternative writ of mandate. We complied.

*583 CONTENTIONS
The Schwartzes reiterate the contentions they raised before the trial court.
(1a) Cedars and amici curiae, California Medical Association and California Association of Hospitals and Health Systems,[2] contend the identities of medical staff review committee members who evaluated the obstetrical privileges held by the defendant doctors constitute proceedings and records of a hospital review committee and therefore are protected from discovery pursuant to section 1157, subdivision (a).

DISCUSSION

1. The issue presented is one of first impression in California.

Cedars's writ petition calls upon this court to address yet another in a series of factual situations which delineate the scope of the discovery immunity afforded by section 1157. Since its enactment in 1968, numerous cases have considered the dimensions of section 1157. (West Covina Hospital v. Superior Court, supra, 41 Cal.3d 846; People v. Superior Court (Memorial Medical Center) (1991) 234 Cal. App.3d 363, 372-387 [286 Cal. Rptr. 478]; County of Los Angeles v. Superior Court (1990) 224 Cal. App.3d 1446, 1452-1454 [274 Cal. Rptr. 712]; Hinson v. Clairemont Community Hospital (1990) 218 Cal. App.3d 1110, 1126-1130 [267 Cal. Rptr. 503]; California Eye Institute v. Superior Court (1989) 215 Cal. App.3d 1477, 1480-1486 [264 Cal. Rptr. 83]; Santa Rosa Memorial Hospital v. Superior Court (1985) 174 Cal. App.3d 711 [220 Cal. Rptr. 236]; Brown v. Superior Court (1985) 168 Cal. App.3d 489, 496-502 [214 Cal. Rptr. 266]; Mt. Diablo Hospital Medical Center v. Superior Court (1984) 158 Cal. App.3d 344 [204 Cal. Rptr. 626]; Saddleback Community Hospital v. Superior Court (1984) 158 Cal. App.3d 206, 208-209 [204 Cal. Rptr. 598]; Snell v. Superior Court (1984) 158 Cal. App.3d 44, 47 [204 Cal. Rptr. 200]; West Covina Hospital v. Superior Court (1984) 153 Cal. App.3d 134 [200 Cal. Rptr. 162]; Henry Mayo Newhall Memorial Hosp. v. Superior Court (1978) 81 Cal. App.3d 626, 631-637 [146 Cal. Rptr. 542]; Roseville Community Hospital v. Superior Court (1977) 70 Cal. App.3d 809 [139 Cal. Rptr. 170]; Schulz v. Superior Court (1977) 66 Cal. App.3d 440 [136 Cal. Rptr. 67]; Matchett v. Superior Court (1974) 40 Cal. App.3d 623 [115 Cal. Rptr. 317].)
*584 Nonetheless, this case presents an issue of first impression in this state, namely, whether section 1157's protection against discovery of proceedings and records of organized committees of a hospital's medical staff requires suppression of the identities of doctors involved in the evaluative functions performed by committees.[3]
In resolving this issue we look first to the rules governing statutory interpretation and then to the legislative history and purpose of section 1157.

2. Law applicable to the interpretation of a statute.

"[O]ur first inquiry must be as to the `four corners' of section 1157 itself, for `[w]hen statutory language is clear and unambiguous, there is no need for construction, and courts should not indulge in it.' [Citation.]" (People v. Superior Court (Memorial Medical Center), supra, 234 Cal. App.3d at p. 374; West Covina Hospital v. Superior Court, supra, 41 Cal.3d at p. 850.)
Because section 1157 is not clear and unambiguous with respect to the issue before us, we resort to well settled rules of construction.
(2) Generally, absent compelling countervailing considerations or explicit statutory language, statutes are interpreted in favor of liberal rights of discovery. (Greyhound Corp. v. Superior Court (1961) 56 Cal.2d 355, 377 [15 Cal. Rptr. 90, 364 P.2d 266]; County of San Diego v. Superior Court (1986) 176 Cal. App.3d 1009, 1022 [222 Cal. Rptr. 484]; Board of Trustees v. Superior Court (1981) 119 Cal. App.3d 516, 524-526 [174 Cal. Rptr. 160].) Discovery privileges, on the other hand, prevent the admission of relevant evidence, may obstruct the attainment of justice, and should be construed narrowly. (West Covina Hospital v. Superior Court, supra, 41 Cal.3d at p. 851; People v. Superior Court (Memorial Medical Center), supra, 234 Cal. App.3d at p. 377.)
(3) However, "`"our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute *585 themselves, giving to the language its usual, ordinary import.... The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.... [Citations.]"' (Walnut Creek Manor v. Fair Employment & Housing Com. (1991) 54 Cal.3d 245, 268....)" (Central Pathology Service Medical Clinic, Inc. v. Superior Court (1992) 3 Cal.4th 181, 186-187 [10 Cal. Rptr.2d 208, 832 P.2d 924].)
Above all, the intention of the Legislature must be ascertained and followed. (People v. Superior Court (1969) 70 Cal.2d 123, 132 [74 Cal. Rptr. 294, 449 P.2d 230].) "[R]egard is to be had not so much to the exact phraseology in which the intent has been expressed as to the general tenor and scope of the entire scheme embodied in the enactments." (County of Los Angeles v. Frisbie (1942) 19 Cal.2d 634, 639 [122 P.2d 526].)
We interpret section 1157 with the foregoing considerations in mind.

3. The statute does not reveal on its face whether the identities of evaluating review committee members are included within the discovery privilege.

Section 1157, taken literally, protects only proceedings and records of a review committee. Giving the words of the statute their plain and ordinary meaning, it can be argued the identities of the committee members have nothing to do with the proceedings or records of the committee.[4]
Using the words in their ordinary sense, proceedings would constitute that which transpired at a committee meeting. Because the medical staff of a *586 hospital is concerned with the quality of in-hospital medical care, the proceedings of a review committee include evaluation of the qualifications of applicants and holders of staff privileges, consideration of recommendations for appointment, reappointment, curtailment and exclusion from staff privileges, and provision for peer group methods of reviewing basic medical, surgical and obstetrical functions. (West Covina Hospital v. Superior Court, supra, 41 Cal.3d at pp. 852-853; Matchett v. Superior Court, supra, 40 Cal. App.3d at p. 628.)
Clearly, the evaluation of the obstetrical privileges held by defendant doctors falls within the proceedings of the medical staff review committee. However, the statute does not address the issue presented here. That is, section 1157 is silent as to whether the identities of the particular committee members who participate in the evaluation of a defendant doctor constitute a protected part of the proceedings and records.
Because the language of the statute is not clear on this point, we turn to "`"the legislative history of the statute and the wider historical circumstances of its enactment"'" in order to ascertain the intent of the Legislature. (Central Pathology Service Medical Clinic, Inc v. Superior Court, supra, 3 Cal.4th at p. 187.)

4. Legislative history and purpose of section 1157.

The Legislature enacted section 1157 in 1968 "in response to a threatened harm to the public interest posed by" the ruling in Kenney v. Superior Court (1967) 255 Cal. App.2d 106 [63 Cal. Rptr. 84], which allowed a medical malpractice plaintiff to discover hospital staff records. (See, People v. Superior Court (Memorial Medical Center), supra, 234 Cal. App.3d at p. 376, and cases cited there.)
Matchett v. Superior Court, supra, 40 Cal. App.3d 623, was the first case to interpret section 1157, and it has been followed extensively since. Matchett concluded the Legislature had enacted section 1157 because it recognized the activities of hospital review committees must be confidential in order to ensure a high quality of medical care. Matchett observed: "When medical staff committees bear delegated responsibility for the competence of staff practitioners, the quality of in-hospital medical care depends heavily upon the committee members' frankness in evaluating their associates' medical *587 skills and their objectivity in regulating staff privileges. Although composed of volunteer professionals, these committees are affected with a strong element of public interest." (40 Cal. App.3d at p. 628.)
"California law recognizes this public interest by endowing the practitioner-members of hospital staff committees with a measure of immunity from damage claims arising from committee activities. (Civ. Code, § 43.7; Ascherman v. San Francisco Medical Society (1974) 39 Cal. App.3d 623, [662-663]....)[[5]] Evidence Code section 1157 expresses a legislative judgment that the public interest in medical staff candor extends beyond damage immunity and requires a degree of confidentiality.... Section 1157 was enacted upon the theory that external access to peer investigations conducted by staff committees stifles candor and inhibits objectivity. [Fn. omitted.] It evinces a legislative judgment that the quality of in-hospital medical practice will be elevated by armoring staff inquiries with a measure of confidentiality." (Matchett v. Superior Court, supra, 40 Cal. App.3d at pp. 628-629, italics added.)
"This confidentiality exacts a social cost because it impairs malpractice plaintiffs' access to evidence. In a damage suit for in-hospital malpractice against doctor or hospital [fn. omitted] or both, unavailability of recorded evidence of incompetence might seriously jeopardize or even prevent the plaintiff's recovery. Section 1157 represents a legislative choice between competing public concerns. It embraces the goal of medical staff candor at the cost of impairing plaintiffs' access to evidence." (Matchett v. Superior Court, supra, 40 Cal. App.3d at p. 629, italics added; People v. Superior Court (Memorial Medical Center), supra, 234 Cal. App.3d at p. 381.)
The thorough analysis and rationale of Matchett is compelling, convincing and, in our view, controlling. This is so although such a conclusion appears *588 to violate the rules of statutory construction which favor liberal interpretation of discovery restrictions and the strict construction of evidentiary privileges. However, the overriding consideration in construing any statute is the ascertainment of the legislative intent. That intent has been established by the Matchett decision.

5. The tension between the competing interests thus has been resolved.

Matchett found the privilege conferred by section 1157 constitutes a balance struck by the Legislature between the rights of plaintiffs to discover relevant information on the one hand, and the right of the public to quality health care on the other.
"The Legislature presumably balanced this potential burden [to individual plaintiffs] against the public interest in promoting candor and frankness at peer review committee meetings and concluded the latter outweighed the former. (Matchett, supra, 40 Cal. App.3d at p. 629.) `[T]here is no justification for courts to strike a different balance.' (West Covina, supra, 41 Cal.3d at p. 855, fn. omitted.) It is not our function as a judicial body to reweigh the competing interests considered by the Legislature based on our perception of which consideration may or may not be more important." (California Eye Institute v. Superior Court, supra, 215 Cal. App.3d at pp. 1485-1486.)
Nor has the Legislature shown any interest in abrogating Matchett's interpretation of its intent in enacting section 1157.
(1b) Accordingly, whether we consider the identity of evaluating physicians to be protected as an inherent part of the proceedings and records of the review committee, or merely follow the Matchett rationale of extending protection to the evaluative process, the result is the same. Section 1157 prevents the Schwartzes from discovering the identity of the physicians who participated in the evaluation of the obstetric privileges held by the defendant doctors. It would be an incongruous result if the statute protected the work product of the review committee but exposed the identity of the evaluating committee members whose candor the statute seeks to promote.
Because our Supreme Court also has not seen fit to contradict or compromise Matchett during the 18 years it has been on the books as the leading case on the proper interpretation of section 1157, and in fact has cited it with approval (see, West Covina Hospital v. Superior Court, supra, 41 Cal.3d at pp. 852-854), we follow its rationale and conclude the identities of evaluating committee members too are privileged.

6. West Covina does not compel a contrary result.

The Schwartzes argue entitlement to discovery of the identities of review committee members who evaluated the staff privileges held by defendant *589 doctors based on West Covina. There, in a four-to-three opinion, the majority held voluntary testimony of committee members is permissible under section 1157, subdivision (b).
The majority so concluded because the section provides only that no person in attendance at a hospital review committee meeting "shall be required to testify as to what transpired at that meeting." (See, fn. 1, ante.) The high court found the prohibition of voluntary testimony "is not essential to the promotion of the legislative purposes." (West Covina Hospital v. Superior Court, supra, 41 Cal.3d at p. 854.) The scope of this exception apparently includes any and all matters discussed at such meetings.
The Schwartzes argue West Covina, at least by implication, recognizes the right to discover the identities of committee members.
Although the dissent in West Covina recognized voluntary testimony of a committee member has the potential to frustrate the privilege otherwise provided by section 1157, (West Covina Hospital v. Superior Court, supra, 41 Cal.3d at p. 858), the majority held the exclusion of compelled testimony is sufficient to serve the purpose of the section.
We observe that while denial of discovery makes more difficult the task of locating a committee member who participated in the evaluation of a defendant doctor and is willing to testify, it does not prevent it. Accordingly, we reject the Schwartzes' claim West Covina implies a right of discovery here and find this case controlled by the Legislature's determination that the public good requires confidentiality in medical staff evaluation proceedings. This public benefit outweighs the Schwartzes's right to discover the identities sought here.

CONCLUSION
Matchett held the Legislature intended section 1157 to provide the proceedings and records of hospital review committees with discovery immunity. In line with Matchett's rationale, the immunity so provided protects the identity of evaluating committee members from discovery by a medical malpractice plaintiff. The Legislature's intent that the work of such committees be marked by confidentiality, frankness and candor would be frustrated in large measure if the physicians who performed these necessary tasks were subjected to inquiry from plaintiffs' lawyers regarding the evaluations.
However, as have other courts before us (see, e.g., West Covina Hospital v. Superior Court, supra, 41 Cal.3d at p. 860 (dis. opn. of Panelli, J.); People *590 v. Superior Court (Memorial Medical Center), supra, 234 Cal. App.3d at p. 390 (conc. opn. of Woods (Fred), J.)), we invite the Legislature to resolve any confusion caused by this holding with a simple clarifying amendment.

DISPOSITION
The alternative writ heretofore issued is discharged. Let a writ of mandate issue directing the respondent court to issue a new order granting Cedars's motion for a protective order.
Croskey, J., and Hinz, J., concurred.
NOTES
[1] Section 1157 provides in relevant part:

"(a) Neither the proceedings nor the records of organized committees of medical, ... staffs in hospitals, or of a peer review body, ..., having the responsibility of evaluation and improvement of the quality of care rendered in the hospital, or for that peer review body, ..., shall be subject to discovery. [¶] (b) Except as hereinafter provided, no person in attendance at a meeting of any of those committees shall be required to testify as to what transpired at that meeting."
[2] Amici curiae sought and received leave to file a brief in support of Cedars's petition.
[3] Two cases mention attendance records of hospital review committees but do not specifically indicate whether the members' names are discoverable. (See Mt. Diablo Hospital Medical Center v. Superior Court, supra, 158 Cal. App.3d 344; West Covina Hospital v. Superior Court, supra, 153 Cal. App.3d 134.)
[4] The dictionary defines "proceedings" as "an official record or account (as in a book of minutes) of the things said or done (as at a meeting or convention of a society)...." (Webster's New Internat. Dict. (3d ed. 1986) p. 1807.) The verb to record means "to set down in writing." The noun "record," as relevant here, is defined as "evidence, knowledge or information remaining in permanent form," or "an account in writing or print (as in a document) or in some other permanent form ... intended to perpetuate a knowledge of acts or events." (Id., at p. 1898.)
[5] Civil Code section 43.7, subdivision (b), provides, in part: "There shall be no monetary liability on the part of, and no cause of action for damages shall arise against, ... any member of any peer review committee whose purpose is to review the quality of medical ... services rendered by physicians and surgeons, ... for any act or proceeding undertaken or performed in reviewing the quality of medical ... services rendered by physicians and surgeons, ... or any member of the governing board of a hospital in reviewing the quality of medical services rendered by members of the staff if the ... committee, or board member acts without malice, has made a reasonable effort to obtain the facts of the matter as to which he, she, or it acts, and acts in reasonable belief that the action taken by him, her, or it is warranted by the facts known to him, her, or it after the reasonable effort to obtain facts."