[No. D022953. Fourth Dist., Div. One. Aug. 31, 1995.]

SCRIPPS MEMORIAL HOSPITAL, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Weissburg & Aronson, Carol Isackson, Lowell C. Brown and Shirley J. Paine for Petitioner.

Catherine I. Hanson and Christine R. Hall as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Paul J. Pfingst, District Attorney, Thomas F. McArdle and Richard J. Sachs, Deputy District Attorneys, for Real Party in Interest.

## OPINION

NARES, J.—The issue before us is whether the statutory prohibition against the discovery of records of hospital staff committees applies when the records are sought to impeach an expert called to testify in a criminal trial. We hold Evidence Code[1] section 1157, subdivision (a) provides a broad privilege against the discovery of such records; and, although later enacted subdivision (e) opens the door to discovery in a criminal action, subdivision (e) is limited on its face to records of certain classes of caregivers added to the statute after the passage of Proposition 8. We believe any contrary construction would allow the exception under subdivision (e) to erode the expansive protection against disclosure afforded under subdivision (a).

### FACTUAL AND PROCEDURAL BACKGROUND

Dr. Jaga Nath Glassman, a psychiatrist who practices with Scripps Memorial Hospital (Scripps), was designated as an expert by a defendant charged with child molestation. About a week before the trial was set to start, the prosecutor served a subpoena on Scripps to produce all employment records for Dr. Glassman, including "CURRANT [sic] EMPLOYMENT

---

[1] All statutory references are to the Evidence Code unless otherwise indicated.

STATUS, DISCIPLINARY ACTION REPORTS, PEER REVIEW REPORTS, PATIENT OR PROFESSIONAL COMPLAINTS AND ALL REPRIMANDS-FORMAL OR INFORMAL" for possible use as impeachment at trial. As the district attorney later explained it: "The prosecutor . . . believes the defendant will offer a defense based upon the defendant's purported mental disorder, Multiple Personality Disorder. That defense will be based, at least in part, on the expert testimony of [Dr. Glassman]. Dr. Glassman practices at Scripps. . . . The prosecutor . . . believes that Dr. Glassman has been criticized by his peers for diagnosing Multiple Personality Disorder in patients when the diagnosis was not justified."

Scripps responded to the subpoena with a letter to the deputy district attorney stating the hospital would comply with respect to "administrative files"[2] but, absent a court order, would not produce any "medical staff credential files" on the doctor because those files were protected from disclosure by section 1157.

The trial proceeded as scheduled. At the conclusion of the People's case, the parties brought Scripps's letter to the trial court's attention. Relying on *People* v. *Superior Court (Memorial Medical Center)* (1991) 234 Cal.App.3d 363, 381 [286 Cal.Rptr. 478, 91] (hereafter *Memorial Medical Center*), the court found section 1157 does not prohibit discovery in a criminal action and ordered Scripps to produce records responsive to the subpoena the next morning.[3] Dr. Glassman was scheduled to take the stand the following afternoon.

Scripps requested an emergency stay against disclosure from this court pending review of a petition for writ of mandate. In the meantime, Scripps complied with the subpoena by producing the records to the trial court in a sealed envelope. Before the court examined the records, however, we issued a stay. The doctor testified and the trial ultimately concluded without the records being disclosed.

Although the issue whether the records are discoverable is now technically moot, it is one of continuing public interest, likely to recur and capable of evading review. Accordingly, we exercised our discretion to entertain the petition and issued an order to show cause.[4]

---

[2] The letter added that Scripps had no administrative files on Dr. Glassman.

[3] The trial court later announced it had treated Scripps's letter as a motion to quash and denied the motion.

[4] The California Medical Association and the California Association of Hospitals and Health Systems have joined in the writ proceeding as amici curiae.

## DISCUSSION

 The issue before us is the scope of the protection against disclosure provided by section 1157. There are quite a few cases on the civil side which, with few exceptions, firmly prohibit discovery.[5] Referring to section 1157's prohibition against discovery as a "complet[e] protect[ion]" (*Bell* v. *Sharp Cabrillo Hospital, supra,* 212 Cal.App.3d at p. 1046), an "absolute" immunity (*Snell* v. *Superior Court, supra,* 158 Cal.App.3d at p. 49), and a "blanket exclusion" (*Roseville Community Hospital* v. *Superior Court, supra,* 70 Cal.App.3d at p. 813), these cases as a general rule construe the statutory protection against discovery expansively and any exceptions narrowly. There is only one criminal case, *Memorial Medical Center, supra,* 234 Cal.App.3d 363, and it allows discovery. With this in mind, we begin our analysis.

### I

We start with the statute. Subdivision (a) of section 1157 prohibits the discovery of records and proceedings of organized committees of medical staff in hospitals responsible for evaluating and improving the quality of care rendered. (§ 1157, subd. (a).)[6] As first explained in *Matchett* v. *Superior Court* (1974) 40 Cal.App.3d 623 [115 Cal.Rptr. 317], the statute serves an important purpose: "Section 1157 was enacted upon the theory that external access to peer [review] investigations conducted by staff committees stifles candor and inhibits objectivity. It evinces a legislative judgment that the quality of in-hospital medical practice will be elevated by armoring staff inquiries with a measure of confidentiality." (*Id.* at p. 629, fn. omitted.)

---

[5]See, for example, *Alexander* v. *Superior Court* (1993) 5 Cal.4th 1218, 1227 [23 Cal.Rptr.2d 397, 859 P.2d 96]; *Cedars-Sinai Medical Center* v. *Superior Court* (1993) 12 Cal.App.4th 579, 589 [16 Cal.Rptr.2d 253]; *California Eye Institute* v. *Superior Court* (1989) 215 Cal.App.3d 1477, 1484 [264 Cal.Rptr. 83]; *St. Francis Memorial Hospital* v. *Superior Court* (1988) 205 Cal.App.3d 438 [252 Cal.Rptr. 380]; *Bell* v. *Sharp Cabrillo Hospital* (1989) 212 Cal.App.3d 1034, 1046 [260 Cal.Rptr. 886]; *Mt. Diablo Hospital Dist.* v. *Superior Court* (1986) 183 Cal.App.3d 30, 34 [227 Cal.Rptr. 790]; *Santa Rosa Memorial Hospital* v. *Superior Court* (1985) 174 Cal.App.3d 711, 719 [220 Cal.Rptr. 236]; *Snell* v. *Superior Court* (1984) 158 Cal.App.3d 44, 49 [204 Cal.Rptr. 200]; *Roseville Community Hospital* v. *Superior Court* (1977) 70 Cal.App.3d 809, 813 [139 Cal.Rptr. 170].

[6]Section 1157, subdivision (a), presently provides: "Neither the proceedings nor the records of organized committees of medical, medical-dental, podiatric, registered dietitian, psychological, or veterinary staffs in hospitals, or of a peer review body, as defined in Section 805 of the Business and Professions Code, having the responsibility of evaluation and improvement of the quality of care rendered in the hospital, or for that peer review body, or medical or dental review or dental hygienist review or chiropractic review or podiatric review or registered dietitian review or veterinary review or acupuncturist review committees of local medical, dental, dental hygienist, podiatric, dietetic, veterinary, acupuncture, or chiropractic societies, or psychological review committees of state or local psychological associations or societies having the responsibility of evaluation and improvement of the quality of care, shall be subject to discovery."

Absent protection against disclosure, the fear is physicians will stop providing negative comments or constructive criticism. (*Alexander* v. *Superior Court, supra*, 5 Cal.4th at p. 1228.) " '. . . Without this frank exchange of information, medical staffs will have no legal grounds upon which to initiate corrective action (such as restricting privileges, or requiring monitoring or further education) that could be critical to the protection of patients. Clearly such a result would be contrary to the Legislature's intent in enacting section 1157.' " (*Ibid.*)

As originally enacted in 1968, the statutory privilege was restricted to committees of medical staff in hospitals or local medical societies. (Stats. 1968, ch. 1122, § 1, p. 2138; *Memorial Medical Center, supra*, 234 Cal.App.3d at p. 372.) The statute was amended numerous times to enlarge the classes of caregivers whose records were protected from disclosure.[7] Our focus here, however, is the amendments in 1983 and thereafter: the 1983 amendments added dietitians and podiatrists to the protected group (Stats. 1983, ch. 289, § 3, p. 864; Stats. 1983, ch. 422, § 1, p. 1705); the amendment in 1985 included psychologists (Stats. 1985, ch. 725, § 1, p. 2371); and in 1990 the Legislature extended the privilege to peer review bodies as defined in Business and Professions Code section 805 (Stats. 1990, ch. 196, § 2).

Meanwhile, in 1983, following the passage of the "Victims' Bill of Rights," Proposition 8, in June 1982, the Legislature first added subdivision (e) to section 1157. Subdivision (e) in its present form provides the amendments to section 1157 in 1983, 1985 or 1990 (described in the preceding paragraph) do not exclude the discovery or use of relevant evidence in a criminal action.[8] The wording of subdivision (e) parallels language in the "Right to Truth-in-Evidence" paragraph of Proposition 8.[9]

On its face, section 1157 subdivision (e) is clearly and unambiguously limited in application to the records of health providers added to the statute

---

[7]Pre-1983 amendments added dentists, dental hygienists, chiropractors and veterinarians to the classes covered by the statute. (Stats. 1975, ch. 674, § 2 p. 1468; Stats. 1978, ch. 7, § 1, p. 62; Stats. 1978, ch. 503, § 2, p. 1648; Stats. 1982, ch. 705, § 3, p. 2864.)

[8]Section 1157, subdivision (e) provides: "The amendments made to this section by Chapter 1081 of the Statutes of 1983, or at the 1985 portion of the 1985-1986 Regular Session of the Legislature, or at the 1990 portion of the 1989-1990 Regular Session of the Legislature, do not exclude the discovery or use of relevant evidence in a criminal action."

[9]Proposition 8 amended the California Constitution by adding, among other provisions, a paragraph entitled "Right to Truth-in-Evidence" to article I, section 28. The paragraph provides in pertinent part: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding . . . . Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782 or 1103. Nothing in this section shall affect any existing statutory or constitutional right of the press." (Cal. Const., art. I, § 28, subd. (d).)

in 1983, 1985 or 1990. The provision expressly states the "amendments" of 1983, 1985 or 1990 "do not exclude the discovery or use of relevant evidence in a criminal action." (§ 1157, subd. (e).) Applying the common-sense construction that "[w]hen people say one thing, they do not mean something else" (2A Sutherland, Statutes and Statutory Construction (5th ed. 1992 rev.) § 47.24, p. 228), we believe, had the Legislature meant to allow access to records of all classes of caregivers in criminal actions and not just those added by the amendments of 1983, 1985 or 1990, it would have said so.

## II

*Memorial Medical Center, supra,* 234 Cal.App.3d 363, however, reaches a contrary conclusion. Briefly summarized, in that case the People initiated a special proceeding for the issuance of a search warrant to obtain hospital peer review committee records on an anesthesiologist suspected of criminal negligence in the deaths of two patients. In an attempt to balance "[t]he goal of section 1157 [for] improved health care" against "the threat of unfettered criminal activity . . ." (*id.* at p. 374), the Court of Appeal held "section 1157 does not apply to property sought under a properly issued search warrant." (*Id.* at p. 372.)

The court found section 1157, subdivision (e) ambiguous. It reasoned the provision could be interpreted to mean only the records of health providers added by the 1983, 1985 or 1990 amendments to section 1157 were discoverable in a criminal action. (*Memorial Medical Center, supra,* 234 Cal.App.3d at p. 374.) But it also believed subdivision (e) could be read as saying the amendments of 1983, 1985 and 1990 "[did] not alter the original meaning of the statute by adding an immunity from criminal discovery" (234 Cal.App.3d at p. 375, italics omitted)—i.e., no caregiver records were exempt in a criminal action because the prohibition against discovery was limited to civil proceedings.

The court resolved the ambiguity by reviewing legislative history, found few if any references to protecting the records in the criminal arena, and concluded largely by negative implication the Legislature only intended to protect the records of caregivers from disclosure in civil actions. (*Memorial Medical Center, supra,* 234 Cal.App.3d at pp. 375-382.) The court construed subdivision (e) consistent with Proposition 8 to clarify that relevant evidence would not be excluded in a criminal action, explaining clarification was necessary because all the post-Proposition 8 amendments to section 1157 passed by more than a two-thirds vote in each house and no clarification had

previously been required because Proposition 8 was not retroactive. (234 Cal.App.3d at p. 375.) Assuming, however, section 1157, subdivision (e) was not ambiguous and the correct interpretation was that only records of caregivers added by the 1983, 1985 or 1990 amendments were discoverable in a criminal action, the court went on to hold the People were nevertheless entitled to the records because (1) the 1990 amendment opened records of a Business and Professions Code section 805 peer review body to the discovery or use in a criminal action, and (2) a Penal Code section 1524 proceeding for a search warrant was a criminal action.

### III

We disagree with *Memorial Medical Center*. As noted above, we find no ambiguity in the statute. On its face, subdivision (e) is expressly limited in application to the records of classes of caregivers added by amendment to section 1157 in 1983, 1985 or 1990. In our view, limiting discovery in criminal actions to records of groups added to the statute in 1983, 1985, or 1990 not only comports with the plain meaning of the words used, but is consistent with other provisions in the Evidence Code, the Right to Truth-in-Evidence paragraph and the legislative history.

First, "[e]xcept as otherwise provided by statute," the Evidence Code applies in every "action." (§ 300.) The Evidence Code defines "action" to include both civil and criminal actions. (§ 105.) Thus, the lack of any statutory provision "otherwise" for caregivers covered by the statute before the 1983 amendments means the prohibition against discovery extends to both criminal and civil actions. Significantly, when the Legislature wants to exclude evidence in a civil proceeding but allow it in a criminal action, it has had no difficulty doing so: in analogous sections 1156 and 1156.1,[10] it prohibited the admission of evidence in actions and administrative proceedings, but expressly added the "section did not exclude evidence which is relevant in a criminal action." (§§ 1156, subd. (d),[11] 1156.1, subd. (d).)

Second, our construction is consistent with the Right to Truth-in-Evidence paragraph in Proposition 8. Besides requiring a supermajority vote to exclude relevant evidence in a criminal action, the paragraph also expressly

---

[10]Sections 1156 and 1156.1 are similar to section 1157 but deal with committee records on morbidity and mortality studies.

[11]From its original passage in 1965, section 1156 contained an express exemption for "evidence which is relevant evidence in a criminal action." (Stats. 1965, ch. 299, § 2, p. 1338.) Section 1157 had no exemption until 1983. (Stats. 1983, ch. 422, p. 1705.) In 1975, the Legislature added the category "medical-dental" to sections 1156 and 1157. (Stats. 1975, ch. 674, p. 1468.) Although the Legislature no doubt became reacquainted with the exemption for evidence relevant in a criminal action when it amended sections 1156 and 1157 in 1975, it did not extend the exemption to section 1157.

provides that "[n]othing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay . . . ."[12] (Cal. Const., art. I, § 28, subd. (d).) At the time Proposition 8 was passed in June 1982, section 1157 was an "existing statutory rule of evidence relating to privilege."[13] When we consider the 1983 amendments in light of this portion of the Right to Truth-in-Evidence paragraph, we believe subdivision (e) makes it clear that the records of new classes of caregivers added by amendment to section 1157 after passage of Proposition 8 will not be excluded in criminal proceedings, while the existing privilege under section 1157 pre-Proposition 8 classes of caregivers enjoyed remains unaffected.[14]

Third, turning to the legislative history, we note *Memorial Medical Center* concludes the prohibition on discovery is limited to civil actions relying on (1) suggestions in the legislative materials that the prohibition was a legislative response to *Kenney* v. *Superior Court* (1967) 255 Cal.App.2d 106 [63 Cal.Rptr. 84], and intended to apply in malpractice actions and (2) companion legislation to shield peer review committees and professional societies from civil liability. (*Memorial Medical Center, supra,* 234 Cal.App.3d at pp. 376-380.) The court also stated it found no evidence that the Legislature considered applying the prohibition against discovery to criminal actions, explaining the legislative reports focus on expanding the classes of health

---

[12]See *ante,* footnote 9, for text.

[13]Although the Right to Truth-in-Evidence paragraph does not define the word "privilege" and section 1157 is not within the privileges listed in division 8 (commencing with section 900), the cases refer to section 1157 as creating a "privilege." We construe the word "privilege" in its ordinary sense as excusing a person from disclosing information. Witkin explains: "Privilege exempts [a person] from testifying . . . for reasons of public policy which have nothing to do with his competency to testify. The rules of privilege are designed to protect personal relationships or other interests where the protection of confidentiality is considered more important than the need for the evidence. . . ." (2 Witkin, Cal. Evidence (3d ed. 1986) Witnesses, § 1068, p. 1012, citations & italics omitted.) We note further, the Legislative Counsel has also concluded section 1157 is properly characterized as a "privilege" for purposes of Proposition 8. (Ops. Cal. Legis. Counsel, No. 18768 (Sept. 30, 1983) Evidence, p. 4.)

[14]In *Memorial Medical Center, supra,* 234 Cal.App.3d at page 375, the court states Proposition 8 passed in 1980 when in fact it was added by an initiative which was approved by the voters and became *effective in 1982.* (Cal. Const. art. I, § 28, added by initiative, Primary Elec. (June 8, 1982).) Although the mistake was undoubtedly an oversight, if the court supposed Proposition 8 took effect in 1980, the 1983 amendments to section 1157 were not the first post-Proposition 8 amendments: in 1982, the Legislature amended section 1157 to add veterinarians to the groups protected by the privilege against discovery. (Stats. 1982, ch. 705, § 3, p. 2864.) Obviously, the Legislature never mentioned the 1982 amendment in subdivision (e). The failure to explain what would, in light of the premise of *Memorial Medical Center,* seem to be a critical legislative omission detracts from the strength of the court's conclusion.

providers whose records will be protected, without distinguishing the privilege conferred on newly added classes from the privilege existing classes enjoyed. (*Id.* at pp. 377, 379.)

We have also reviewed the legislative history and disagree. The fact that one or more legislators may have referred to malpractice actions or that peer review committee members may enjoy immunity from civil suit is not, in our view, determinative on the issue of the availability of the records in a criminal proceeding. We also take exception to the notion the Legislature was unaware of a distinction between the old and new classes of caregivers or was treating the two the same.

To the contrary, the legislative material clearly shows the distinction did not go unnoticed. Recognizing that Assembly Bill No. 1502 (adding podiatrists to § 1157) provided the exemption from discovery would not apply to evidence relevant in a criminal action for podiatrists, a report prepared May 2, 1983, for the Assembly Committee on the Judiciary asked whether the exemption should also cover records kept by committees in the medical, dental, veterinary and chiropractic professions (caregivers covered before 1983). (Assem. Com. on Judiciary Rep. on Assem. Bill No. 1502 as introduced Mar. 3, 1983 (May 2, 1983) p. 2.) The Senate Committee on the Judiciary also acknowledged the exclusion for relevant evidence in a criminal action for podiatrists and asked in committee whether it should be applied to "doctors, dentists, vets and chiropractors." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1502 (1983-1984 Reg. Sess.) as introduced Mar. 3, 1983.) In the third reading analysis of the bill dated May 5, 1983, the Assembly Office of Research stated: "The provision which specifies that the prohibition against discovery does not apply in criminal actions covers *only* podiatric staffs and podiatric review committees. *It does not, apparently, cover records kept by other such [pre-1983] committees, such as medical or dental societies.*" (Assem. Off. of Research, 3d Reading Analysis, Assem. Bill No. 1502, as introduced Mar. 3, 1983, italics added.) Thus, the legislative history shows the Legislature appreciated and apparently conceded the distinction between old and new classes of health providers.

The legislative materials also contain an analysis dated September 30, 1983, from the Office of Legislative Counsel (Bion M. Gregory) which acknowledges and explains the distinction. Analyzing whether the provision exempting relevant evidence in a criminal action in the 1983 amendments avoided the necessity for a two-thirds vote, Legislative Counsel stated:

"While this constitutional provision [Cal. Const. art. I, § 28, subd. (d)], denominated the Right to Truth-in-Evidence . . . , has not yet been construed by the California Supreme Court, its impact appears to be broad with

regard to legislatively and judicially created rules which serve to suppress or exclude relevant evidence in criminal proceedings except to the extent those exclusionary rules are required by the United States Constitution.

"However, the measure does make itself inapplicable to 'any existing statutory rule of evidence relating to privilege.' While Section 1157 is not contained in that portion of the Evidence Code relating generally to privileges (Div. 8 (commencing with Section 900)), Section 1157 is nonetheless worded in a way which we think is properly characterized, for the purpose of [Cal. Const., art. I,] Section 28, as a privilege thereto. [Citation.]

"In this connection, Section 1157 was originally enacted in 1968 . . . and was amended in 1975, 1978, and 1982 . . . , each time adding another category of professional proceedings to the protections of the section.

"*To the extent these provisions were enacted prior to the passage of the Victim's Bill of Rights, the proceedings and records subject to Section 1157 would be protected in criminal proceedings and not subject to [Cal. Const., art. I,] Section 28.*

"However, if Section 1157 were amended to include the podiatry profession with respect to both civil and criminal actions, the new provisions would be subject to the two-thirds vote requirement of [California Constitution, article I,] Section 28." (Ops. Cal. Legis. Counsel, No. 18768, *supra*, Evidence, pp. 3-4, fn. omitted, italics added.)

Under the circumstances, we conclude section 1157 provides broad protection for the confidentiality of records of health providers who were covered before the adoption of Proposition 8 but allows access in criminal actions for caregivers added by amendment in 1983, 1985 or 1990.[15]

IV

Finally, we believe interpreting the statute in the fashion indicated in *Memorial Medical Center* will invite a collapse of the statutory protection for the "frank exchange of information" considered necessary to enable a hospital "to initiate corrective action . . . that could be critical to the protection of patients. . . ." (*Alexander* v. *Superior Court, supra*, 5 Cal.4th at p. 1228.)

---

[15]Neither Scripps nor the People brief the 1990 amendment. Because, however, section 1157 as originally enacted applied to hospital peer review committees while the 1990 amendment focused on expanding that protection to clinics and health care plans (*Memorial Medical Center, supra*, 234 Cal.App.3d at p. 381), we conclude the pre-Proposition 8 protection for hospital peer review committees at issue in this case remains intact.

No physician will be able to render percipient or expert testimony for the prosecution or defense in a criminal proceeding without becoming subject to discovery for impeachment[16] and loss of a major privilege otherwise possessed. As the amici curiae point out: "[T]he . . . impact will be to alert expert witnesses that if they provide the needed expertise in opinions to a court, they have waived their section 1157 protections. It will alert all peer review participants that the confidentiality of peer review proceedings they voluntarily perform can be breached if a colleague serves as an expert witness. This will eliminate a large portion of qualified, knowledgeable practitioners who otherwise would be willing to testify as expert witnesses. Candid discussions among peer review committees and willingness to prophylactically intervene on behalf of patients will be compromised. This will severely undermine the public policy considerations and benefits derived from section 1157."

In the final analysis, the construction urged in *Memorial Medical Center* would permit the exception under section 1157 subdivision (e) to swallow up the staunch protection for confidentiality afforded by subdivision (a). It would also have a profound effect on the availability of medical testimony in the criminal justice system. We do not believe the Legislature ever intended such a result.

Let a writ of mandate issue directing the superior court to vacate its order filed on February 16, 1995, and enter an order consistent with this opinion. They stay issued by this court on February 17, 1995, is vacated.

Froehlich, J.,* concurred.

**WORK, Acting P. J.,** Dissenting.—

I

Preliminarily, I would deny the petition on the grounds of mootness. First, the real party in interest, People of the State of California represented by the San Diego County District Attorney, has expressed no interest in pursuing this matter because the criminal case for which it sought records from Scripps Memorial Hospital (Scripps) has long since concluded.

---

[16]"Relevant" evidence is broadly defined to include "evidence relevant to the credibility of a witness . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (§ 210.) Impeaching an expert such as Dr. Glassman with peer review criticism he diagnosed multiple personality disorder in patients when the diagnosis was not justified would clearly appear to qualify under section 210.

*Retired Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.

Second, the physician who was the subject of the relevant hospital peer review reports and proceedings has always consented to the release of this information.

Third, Scripps is no longer subject to requests for production in this long-since completed criminal action, nor will it be. That is not to say I disagree with the majority's suggestion the general issue is one of continuing concern. However, there has been no showing made that it is a concern that requires this court to visit the issue which was thoroughly addressed four years ago in *People* v. *Superior Court Memorial Medical Center* (1991) 234 Cal.App.3d 363 [286 Cal.Rptr. 478] (hereafter *Memorial Medical Center*), the holding of which the trial court here was bound to follow under the authority of *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]. There appear to have been no complaints from health care providers the *Memorial Medical Center* decision opened the floodgates to peer review discovery in criminal cases, as prophesied by its concurring justice. Nor has the Legislature expressed any similar concern in spite of the concurring justice's exhortation to revamp the statute. Only one reported case, *Memorial Medical Center*, has shared our concern in the 27 years since Evidence Code[1] section 1157 was enacted.

II

On the merits of this case, I respectfully dissent from the majority's resolution because I find the *Memorial Medical Center* analysis persuasive.

A.

Indeed, Scripps, unlike its amici curiae, acknowledges its approval of *Memorial Medical Center* on its facts. That is, where a physician is the subject of a criminal investigation, Scripps agrees the significant public interest in bringing a criminal to justice outweighs any countervailing private interest in preventing the People from accessing these materials.[2] In taking this position, Scripps tacitly concedes the discovery restrictions in section 1157 are not "privileges" as the term is used in common parlance and, in particular, as referred to in the Evidence Code. In that code,

---

[1] All statutory references are to the Evidence Code.

[2] One would suspect the public interest in preventing a physician-witness from hindering the People from bringing a criminal to justice would be equally important. Or, for that matter, the use of relevant evidence to prevent convictions of innocent persons would seem equally important.

evidentiary restrictions denominated as privileges are absolute. On the other hand, discovery restrictions give way in the face of a more important public interest. Mr. Witkin distinguishes these categories, listing and discussing evidentiary statutory restrictions qualifying as "privileges" separately from section 1157 and similar "discovery" statutes which he characterizes as "Special Privacy Statutes." (2 Witkin, Cal. Evidence (3d ed. 1986) Witnesses, §§ 1068, 1095, pp. 1012, 1038.)

Because of the recognized significant difference between a "privilege" and a discovery statute protecting privacy, I conclude section 1157 materials do not fall within the exception to the "Truth-in-Evidence" provisions of the California Constitution, article I, section 28.[3] Thus, even were section 1157 originally intended to apply to criminal discovery, the voter initiative would have eliminated that protection.

"Privileges," characterized as such by the Evidence Code, relate to communications made to persons with whom the communicator stands in a close confidential relationship. This relationship is the basis for the recognition of the "privilege." They are absolute; no party may reveal the communication except with the express consent or implied waiver of the person statutorily identified as a "holder" of the privilege. While the "holder" of a privilege has absolute control of whether a privileged communication can be revealed, section 1157 has broad exemptions which apply irrespective of any entity's or individual party's desire for confidentiality.

Section 1157, subdivisions (c) and (d) state:

"(c) The prohibition relating to discovery or testimony does not apply to the statements made by any person in attendance at a meeting of any of those committees who is a party to an action or proceeding the subject matter of which was reviewed at that meeting, or to any person requesting hospital staff privileges, or in any action against an insurance carrier alleging bad faith by the carrier in refusing to accept a settlement offer within the policy limits.

"(d) The prohibitions in this section do not apply to medical, dental, dental hygienist, podiatric, dietetic, psychological, veterinary, acupuncture, or chiropractic society committees that exceed 10 percent of the membership of

---

[3]At least one commentator concurs. See McCall, *Truth in Evidence and the Privilege Clause—A Compromised Relationship* (1992) 23 Pacific L.J. 1061-1062, 1073.

the society, nor to any of those committees if any person serves upon the committee when his or her own conduct or practice is being reviewed."

Thus, by its terms, the statute does not bar disclosures by persons or for proceedings designated in section 1157, subdivisions (c) and (d), even in appropriate civil litigation and without concern for the interests of peer review committee members or the health care provider. Clearly, the Legislature considered even certain *private* interests paramount to the need for peer review confidentiality. It is significant also that the section was construed as permitting a peer review committee member to voluntarily testify in civil litigation about committee proceedings although the statute prohibited compulsory testimony. (§ 1157, subd. (b); *West Covina Hospital* v. *Superior Court* (1986) 41 Cal.3d 846, 855 [226 Cal.Rptr. 132, 718 P.2d 119, 60 A.L.R.4th 1257].) In spite of a vigorous dissent, the Legislature has not indicated its displeasure with that holding, and there is no statistical data suggesting the benefits of the peer review system have been impaired as a result of that 10-year-old decision.

## B.

Scripps also argues a different result should apply here because *Memorial Medical Center* involved a search warrant rather than, as in this case, a subpoena. However, there is no meaningful difference to our issue whether the procedural vehicle employed to obtain these materials was a warrant rather than a subpoena.

## III

The majority's assumption that the section 1157 prohibition, when enacted, was intended to apply to criminal cases conflicts with the Legislature's comments and legislative history following enactment of article I, section 28, subdivision (d) of the California Constitution. The 1983 Summary Digest analyzing the 1983 amendment to section 1157, which added the proceedings and records of registered dietitians' staffs, registered dietitians' review committees, podiatric staffs and podiatric review committees, states the bill would provide *the existing* section 1157 immunities from discovery to those records and proceedings. As the majority acknowledges, the 1983 amendment affirmatively states this amendment to section 1157 was not intended to preclude discovery of relevant evidence for criminal actions. Thus, the Legislative Analysts interpreted the 1983 amendment as providing *the same protection* from discovery to the newly included peer review committees as *already provided* by section 1157 before the amendment.

To the same effect, in his letter to Governor Deukmejian urging favorable consideration of his Assembly Bill No. 463, the 1983 amendment to section 1157, Assemblyman Richard Alatorre states his bill "extends provisions of *existing law*, which provide immunity to discovery to the records or proceedings of various hospital professional staff committees and health care professional review committees, to similar podiatric and registered dietitian committees." Thus, it appears neither the author of the 1983 amendment to section 1157 nor the Legislative Analyst believed the amendment differentiated between the status of the preexisting and the newly included staffs and committees insofar as it pertained to discovery immunity in criminal actions.

## IV

It is noteworthy that a previous 1983 amendment to section 1157 stemming from Assembly Bill No. 1503 (Assemblyman Dennis Brown) which became subsumed in the Alatorre bill, included podiatrists and podiatric staffs. Assemblyman Brown's letter to the Governor which resulted in his signature, stated: "Like physicians and dentists, podiatrists also police their profession by use of peer review committees. Further, it asserts that podiatrists might be discouraged from offering candid assessments to a podiatric peer review committee if the assessments were discoverable in *civil* proceedings."

Subdivision (d) of section 28 of article I of the California Constitution which became effective June 9, 1982 provides: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each House of the Legislature, relevant evidence shall not be excluded in any criminal proceeding . . . ."

The majority refers to a letter from Legislative Counsel dated September 30, 1983, in response to an inquiry whether the 1983 amendment's reference to discovery in criminal actions avoided the need for a two-thirds vote of the Legislature to enact. Counsel's response was that if section 1157 were amended with the intent to give newly included health care associations and review committees immunity from criminal discovery, that indeed a two-thirds legislative vote would have been required. (In a digression, the letter digresses and postulates section 1157 can be construed as a "privilege" for the purposes of California Constitution, article I, section 28, subdivision (d)). However, the exclusionary language contained in the 1983 amendment has no relevance to the issue of whether a two-thirds vote would have been required to override the constitutional right of discovery contained in the

Constitution. That is, absent an express declaration to the contrary, enacted by a two-thirds vote in each legislative body, the Truth-in-Evidence provisions automatically would have permitted criminal discovery to those newly included entities. By specifically stating the amendment was not intended to prevent discovery in criminal cases, the Legislature avoided any interpretation that criminal discovery would be prohibited should each legislative body pass the bill by a two-thirds vote. (In fact, each of them did.) That is, this language was to prevent any confusion as to whether a two-thirds favorable vote in each body could be construed as a legislative intent to override article I, section 28, subdivision (d).

The petiton of real party in interest for review by the Supreme Court was denied November 30, 1995.