Filed 12/10/15  P. v. Jenkins CA6
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MAURICE MARK JENKINS<br><br>    Defendant and Appellant. | H041543<br>(Santa Cruz County<br>Super. Ct. No. F26719) |

In this case, appellant Maurice Mark Jenkins seeks reversal of his robbery conviction.  (Pen. Code, § 211.)  Appellant argues that the trial court erred by allowing the prosecution to present evidence to the jury of six uncharged robberies that he committed in addition to the robbery for which he was charged.  Specifically, appellant contends that the evidence of uncharged robberies was inadmissible under Evidence Code section 1101, subdivision (b),[1] and that such evidence was substantially more prejudicial than probative under section 352.  We disagree and affirm the judgment.

### Facts Adduced at Trial

*The Charged Robbery of Scotts Valley Gas—February 27, 2012*

On February 27, 2012, appellant and his then-girlfriend Ana Blander were driving toward Santa Cruz on Highway 17.  They were accompanied by a man named Amador Rivera.  Appellant told Blander to leave the highway.  The car passed a gas station called Scotts Valley Gas, and Blander parked a short distance away.  Appellant and Rivera got

---

[1] All further statutory references are to the Evidence Code unless otherwise indicated.

out of the car; both were wearing black clothing.  Appellant was wearing black Air Jordan shoes, a black Spiderman backpack with red straps, Franklin batting gloves, and a purple face covering.

Paul Sams was working at the convenience store at Scotts Valley Gas around 7:00 p.m. on February 27.  He was in the back room of the store getting a carton of cigarettes when he heard the door chime ring.  This indicated to him that somebody had come into the store.  Sams walked from the back room to the sales counter in order to "engage the customers."  He saw "two flashes" walk by him.  When Sams walked from behind the counter to follow the "flashes," a man confronted him and put a gun in his face.  The man said "something along the lines of, this isn't a fucking joke, like, open the fucking register."  As Sams opened the register, he noticed that the gunman was wearing a purple bandana over his face and a hood over his head.  The gunman was accompanied by a second, slightly shorter, man.  The gunman's companion started wildly grabbing items at the front of the store, including "Swisher cigars."  In particular, the gunman's companion took the "grape cigar packs."  Meanwhile, the gunman was trying to access the store safe, but was unsuccessful.  The gunman tore out the cash register in an attempt to find additional cash hidden underneath the drawers.

As the robbers fled the store, Sams noticed that the gunman was wearing "Ed Hardy pants," which he was able to identify from the "bedazzled" design on the pants' rear pocket.  The robbers left the store with what Sams estimated was approximately $700 in cash.  Although Sams was not able to see the race or ethnicity of the robbers, he believed they were Hispanic because he might have "heard an accent," or Hispanic "lingo" or "vernacular."

According to Blander, a few minutes after appellant and Rivera left the car, they returned "out of breath" and "in a rush."  Appellant was still wearing his purple face covering, as well as the same Ed Hardy jeans and other clothes worn by the robber in the

Scotts Valley Gas surveillance video.[2] Rivera was carrying a backpack filled with Swishers[3] and snacks, while appellant's backpack contained money. Appellant took off the batting gloves he was wearing and the purple cloth covering his face. Appellant told Blander to get back to the highway. As Blander drove in the direction of San Jose, appellant counted the money and gave some to Rivera.

*The Uncharged Robberies*

I. *Robbery of Charlie Liquor Market in San Jose—February 27, 2012*

After leaving Scotts Valley Gas on the night of February 27, Blander drove to San Jose. Appellant told Blander to stop at what she believed to be a gas station or liquor store. Appellant and Rivera got out of the car and walked into the store. They were wearing the same clothes they wore when Blander dropped them off at Scotts Valley Gas. Specifically, appellant was wearing black clothing (including Ed Hardy jeans), black Air Jordan shoes, his black Spiderman backpack with red straps, Franklin batting gloves, and a purple face covering.

Around 8:00 or 9:00 p.m. on February 27, 2012, Hung Le was working the cash register at Charlie Liquor Market in San Jose. Two men entered the store wearing black "hoodies," face coverings, and some kind of gloves. One man jumped onto the counter and told Le to "back off and get on the ground." The man on the counter had a handgun and a Spiderman backpack. Le opened the register for the gunman. The man took all of the cash inside the register, which amounted to a few hundred dollars. The two men grabbed several lottery tickets, some single-serving liquor bottles, and a bottle of Patron tequila before running out of the market.

---

**2** At trial, Blander identified appellant as the gunman from photographs captured from the surveillance video from the gas station based on the gunman's clothing.
**3** Blander explained that Swishers are flavored cigars.

Appellant and Rivera returned to the car. Appellant complained to Blander that he had hurt his knee jumping onto a counter. As appellant and Rivera took off their "disguises," Blander noticed that they had a bottle of Patron tequila with them.

II. *Robbery of Choice Liquor in San Jose—February 27, 2012*

Shortly after leaving Charlie Liquor Market, appellant told Blander to stop at another store. This time, Blander went into the store first to use the restroom and then returned to the car. Appellant and Rivera got out of the car and walked into the store. They were wearing the same clothes they wore when Blander dropped them off at Charlie Liquor Market and at Scotts Valley Gas. Appellant was wearing black clothing (including Ed Hardy jeans), black Air Jordan shoes, Franklin batting gloves, and a purple face covering. Blander identified appellant and Rivera on surveillance videotape from the market.

Around 9:30 p.m. that night, Binh Ho was working at Choice Liquor in San Jose. Two men entered the store wearing black clothes, face coverings, and some kind of gloves. One man pointed a gun at Ho and told her he would kill her if she did not open the register. Ho opened the register for the gunman. He took all of the cash inside, while his companion took liquor bottles and a box full of money that was next to the register. The two men put the money, which totaled about $6,500 or $7,500, into a bag.

III. *Robbery of Vilian Kossev in Richmond—February 9, 2012*

Around 6:00 p.m. on February 9, 2012, Vilian Kossev was walking to his car from his work in Richmond. As he reached the car, appellant and two other men approached and surrounded him. The man standing in front of Kossev—who was not appellant—pointed what appeared to be a handgun at him, while one of the other two men stuck something in his back. As appellant took Kossev's wallet, Kossev noticed that appellant was wearing a backpack with brightly colored straps that contrasted with the rest of appellant's outfit. After appellant and his accomplices fled with Kossev's wallet, Kossev telephoned his credit card company to cancel his card. Kossev asked the credit card

4

company whether his card had been used anywhere, and he was told yes and given two locations on University Avenue. The first location could not provide him with any information and the second was Econo Gas. Kossev viewed surveillance footage from that store. From this he was able to identify appellant as one of the people who robbed him. In the surveillance video, appellant was wearing the same backpack with red straps. Later, Kossev identified appellant in a photographic lineup.

Appellant was charged in Contra Costa County with the robbery of Kossev. Eventually, he pleaded no contest to grand theft.

IV. *Robbery of Super Liquor and Food in Concord—February 18, 2012*

On February 18, 2012, Blander drove appellant to a liquor store in Concord. Appellant got out of the car wearing a black hoodie, jeans, Franklin batting gloves, a Spiderman backpack, and a purple cloth over his face.

Sukhden Singh was working at the Super Liquor and Food in Concord late at night on February 18, 2012. Sometime that night, Singh was eating in the back room when he heard a loud noise. When he went to the front of the store he saw a man and a woman. The man ran toward him; the man had a gun. The man asked Singh to open the register. Once Singh did so, the man took the money and put it into a bag or backpack. This man was wearing gloves, black clothing, and a face covering. Singh told the police that he thought the robber was African-American.

About five minutes after Blander dropped appellant at the liquor store, appellant returned to the car with his backpack full of Swishers and money.

V. *Robbery of a Valero Gas Station in Fairfield—February 22, 2012*

On February 22, 2012, appellant and Blander stopped in Fairfield next to a gas station because they "were out of money." Appellant left the car wearing his black hoodie, black pants, Spiderman backpack, Air Jordans, and Franklin batting gloves.

Around 11:30 p.m. that night, Gian Kharbanda was working at a Valero gas station in Fairfield. A black male entered wearing black clothes, a face covering, and a

5

"kid's school bag" with red zippers. The man pointed a gun at Kharbanda, grabbed money from the store register, took Kharbanda's wallet and cellular telephone, and left.

About five minutes after Blander dropped appellant at the gas station, appellant returned to the car and they went to a nearby hotel. Appellant showed Blander that he had stolen a cellular telephone and a wallet.

Appellant was charged in Solano County with the robbery of the Valero. Eventually, he pleaded no contest to grand theft.

VI. *Robbery of a Shell Gas Station in Martinez—February 28, 2012*

On February 28, 2012—the morning after the Scotts Valley Gas station robbery and the two San Jose robberies—appellant and Blander rented a storage locker in East Palo Alto. Then, appellant and Blander drove to Martinez and stopped at a gas station. They were accompanied by a man named Dionte Davenport. Blander entered the gas station while appellant and Davenport waited in the car. When Blander returned to the car, appellant and Davenport got out. Appellant left the car wearing his black hoodie, his Spiderman backpack, and Franklin batting gloves. As he left, appellant told Blander to wait in the parked car for him.

Amkiredby Ayyalurv was working at a Shell gas station that night on Pacheco Boulevard in Martinez, when two men dressed in black entered around 9:15 p.m. The two men appeared to be black, and one of them pointed what appeared to be a gun at Ayyalurv and told him to open the register. Ayyalurv complied, and the gunman took the money in the register as well as Ayyalurv's cellular telephone. The two men left the store.

Meanwhile, despite appellant's instructions to the contrary, Blander had decided to drive away from the lot. However, she circled back to pick up appellant and Davenport as they ran out of the Shell gas station. Appellant had money in his backpack.

That same night—February 28, 2012—Sergeant Matt Foley of the Contra Costa County Sheriff's Department was driving home after finishing his shift at 9:00 p.m.

6

As he drove through Martinez, he saw two individuals in dark clothes running out the front door of a Shell gas station mini mart. Since he was not on duty, Sergeant Foley was not authorized to take law enforcement action, but department policy encouraged him to observe possible suspicious activity as a potential witness. Accordingly, he watched the two running individuals get into a silver-green Toyota RAV4 with the license plate 5VDY689. He called his dispatch center to report the incident. Then, he followed the RAV4 in his car, heading southbound on Interstate Highway 680. The RAV4 pulled into a mall parking lot,[4] and then got back onto Interstate 680 southbound, where Sergeant Foley lost track of the vehicle.

Deputy Zara Watts of the Contra Costa County Sheriff's Department pursued the RAV4. Deputy Watts followed the RAV4 as it turned off Interstate 680 onto Route 24 westbound toward Oakland, and then left the freeway into the hills surrounding Orinda. At this point, the RAV4 was speeding and running stop signs. As the RAV4 drove into Orinda and then back through the hills toward El Sobrante, Deputy Watts was joined by backup police units. At this point, the occupants of the RAV4 began throwing cash out the window.[5] The RAV4 got back onto the freeway, this time Interstate 580. As the chase approached Hayward, Deputy Watts ceased her part in the pursuit and the California Highway Patrol (CHP) took over.

The RAV4 continued to lead the CHP west on Interstate 238, and then south on Interstate 880 toward San Jose. The RAV4 was going at speeds from 80 to 110 miles per hour and swerving around slower moving traffic. Finally, the RAV4 attempted to cross the Dumbarton Bridge, but ran out of gas before completing the crossing. Appellant, Blander, and Davenport were found inside the RAV4 and taken into custody.

---

[4] Blander testified that she did this in an attempt to evade the car that she saw was following her.

[5] Blander testified that the Spiderman backpack and the gun were thrown out of the car along with the cash.

7

A crime scene investigator from the Contra Costa County Sheriff's Department examined the RAV4 and found, among other things, a Visa debit card with Blander's name on it, Franklin and Saranac brand batting gloves, a large black sweatshirt, a purple sleeve, Kossev's stolen credit card, lottery tickets, a bottle of Patron tequila and other alcohol, and packages of Swishers Sweets. The investigator found appellant's rental contract for his storage locker in East Palo Alto.[6] Inside that locker, the investigator discovered tires that had been on the RAV4[7] and a laundry bag with black jeans and other clothes in it.

During the trial, videotapes from the surveillance cameras at each of the robbery locations (except for the robbery of Kossev) and/or photographs captured from the surveillance video were admitted into evidence.

*Discussion*

*Section 1101*

*Background*

On July 7, 2014, appellant filed a motion in limine seeking to exclude evidence of "all prior arrests and convictions suffered by" appellant as "impermissible propensity evidence" under section 1101, subdivision (a).

The prosecution countered that appellant's uncharged robberies helped to identify him as the individual who committed the charged robbery because of the "common characteristics highly unusual and distinctive to the defendant." Further, the prosecution argued that appellant's clothing "choice and use of the same weapons, along with the same get[-]away" was sufficient to show a common design or scheme. Thus, the prosecution sought to introduce evidence of appellant's prior robberies and convictions under two separate theories—identity and common scheme or plan.

---

[6] At trial Blander identified the rental agreement that appellant had executed.

[7] Blander testified that the tires were originally on the RAV4, but that appellant had replaced them.

The prosecution explained that appellant committed the uncharged robberies wearing the same dark clothes, batting gloves, face covering, and/or Spiderman backpack that the individual who robbed the Scotts Valley Gas station wore. The prosecution asserted that the evidence of the car chase was admissible because of the significance of the items thrown from the car and to show that appellant was with Blander in the RAV4. Appellant acknowledged that he would be denying that he was the Scotts Valley Gas robber. Further, he did not specifically dispute that the distinguishing marks identified by the prosecutor could serve as identifying characteristics under section 1101, subdivision (b). Instead, appellant argued that allowing evidence of the robberies and the car chase would be more prejudicial than probative.

The trial court agreed with the prosecutor's theory of admissibility. However, upon hearing that the prosecution wished to introduce evidence of "about 15" incidents the trial court expressed concern that "[a]t some point . . . it becomes a [section] 352 issue where that number is." The court explained that it would be "up to the [c]ourt to determine" the number of admitted incidents "based on its exercise of discretion." The court determined that it would allow evidence of at least four uncharged incidents,[8] but was concerned that at some point the number of incidents would "approach a critical mass from a [section] 352 perspective." Accordingly, the court asked the parties to return for further argument.

During the trial, the court made a record of the in limine discussions on the section 1101 evidence. The court granted in part and denied in part the prosecution's request to admit evidence of appellant's uncharged crimes. The court observed that the uncharged crimes illustrated "a pattern of evidence" that was relevant "in light of the fact that identity [was being] contested," including such common elements as

---

[8] The court found the incidents that the prosecutor discussed to be probative and relevant and not in violation of section 352, in that they were not unduly confusing to the jury or improperly time consuming.

9

"the backpack, the gloves worn, the usage of a mask, [and] the wearing of a particular type of jeans." However, the court found that "to go with 10 or 12 or 15 incidents at some point [would] become a situation where the prejudicial impact would significantly outweigh the probative value." The court concluded by allowing the prosecution to present evidence of six uncharged incidents: the February 9 Richmond robbery of Kossev, the February18 Concord robbery, the February 22 Fairfield robbery, the two February 27 robberies in San Jose, and the February 28 Martinez robbery and ensuing car chase.

In closing arguments, appellant did not dispute that the charged robbery took place. Instead, he focused his defense on challenging his identity as one of the robbers.

As noted, appellant contends that the evidence of the uncharged robberies was inadmissible under section 1101, and that such evidence was substantially more prejudicial than probative under section 352.

Section 1101 provides in pertinent part, "(a) Except as provided in this section . . . evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." The rule excluding such evidence, however, is qualified by section 1101, subdivision (b), which provides: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act."

On appeal, the trial court's determination of whether to allow evidence under section 1101, "being essentially a determination of relevance, is reviewed for abuse of discretion." (*People v. Carter* (2005) 36 Cal.4th 1114, 1147 (*Carter*); see also *People v.*

10

*Edwards* (2013) 57 Cal.4th 658, 711[appellate court reviews the trial court's determination under section 1101 for abuse of discretion in the light most favorable to the trial court's ruling].)  Similarly, we review a trial court's resolution of admissibility under section 352 for abuse of discretion.  (*Carter*, *supra*, at p. 1149.)  A trial court abuses its discretion when its ruling falls outside the bounds of reason.  (*Ibid*.)

" 'To be relevant on the issue of identity, the uncharged crimes must be highly similar to the charged offenses.  [Citation.]  Evidence of an uncharged crime is relevant to prove identity only if the charged and uncharged offenses display a " 'pattern and characteristics . . . so unusual and distinctive as to be like a signature.' " [Citations.]  "The strength of the inference in any case depends upon two factors:  (1) the *degree of distinctiveness* of individual shared marks, and (2) the *number* of minimally distinctive shared marks."  [Citations]'  [Citation.]"  (*Carter*, *supra*, 36 Cal.4th at p. 1148.)

A lesser degree of similarity is required to establish relevance on the issue of common design or plan.  For this purpose, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual.  (*Carter*, *supra*, 36 Cal.4th at p. 1149.)

Even if no common mark is "particularly distinctive" it is permissible for the court to find that "in the aggregate, the similarities become more meaningful, leading to the reasonable inference that defendant" was the person who committed both the charged and uncharged crimes.  (*People v*. *Medina* (1995) 11 Cal.4th 694, 748 (*Medina*).)

Reviewing the evidence in the light most favorable to the trial court's ruling, we note that certain of the charged and uncharged offenses displayed common features that revealed a highly distinctive pattern.  Appellant and an accomplice focused on the same victim type—all but the robbery of Kossev focused on some kind of convenience store.  The robberies employed the same approach—threatening the victim with what appeared to be a handgun and then stealing cash along with other items from the store.  Further, all the robberies occurred within a three-week time frame.  (See *Medina*, *supra*, 11 Cal.4th at

11

p. 748 [charged and uncharged crimes each involved robbery murder of an employee working alone in a convenience store; the victims were each shot in the head, probably at close range, suggesting an execution murder; the same gun was used and each offense occurred within a two-and-one-half-week period].)  More importantly, in each robbery, the man with the gun wore or had with him distinctively branded items—the Spiderman backpack, the Franklin batting gloves, the Air Jordan shoes, the black clothing and the purple face covering.  Not only do some of these items have a high degree of distinctiveness individually, when taken together they are as unusual and distinctive as to be " 'signature' characteristics."  (See *People v. Hughes* (2002) 27 Cal.4th 287, 333 [the trial court did not abuse its discretion in concluding implicitly that stolen credit cards in Crown Royal bags are sufficiently distinctive signature characteristics to support an inference that the same person committed both the charged and the uncharged acts].)

As to the admission of the uncharged conduct to show a common scheme or plan, if the uncharged conduct is similar enough to prove identity, it is similar enough for other disputed issues such as common scheme or plan.  (*People v. Erving* (1998) 63 Cal.App.4th 652, 660.)

Finally, section 352 allows for the admission of evidence unless "its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Here appellant argues that the admission of "six uncharged robberies to prove a single charged robbery represents a totally lopsided way to conduct a criminal trial."  In essence, he argues that the evidence was cumulative of other evidence.

Certainly, "neither the prosecution nor the defendant has a right to present cumulative evidence that creates a substantial danger of undue prejudice [citation] or that unduly consumes the court's time [citation]."  (*People v. Williams* (2009) 170

12

Cal.App.4th 587, 611 (*Williams*).)  However, "no bright-line rules exist for determining when evidence is cumulative . . . the term 'cumulative' . . . has a substantive meaning and the application of the term must be reasonable and practical."  (*Ibid*.)  Evidence is cumulative if it is repetitive of evidence already before the jury.  (*People v. Evers* (1992) 10 Cal.App.4th 588, 599, fn. 4.)

Given the importance of the other-crimes evidence to establish appellant's identity as one of the robbers in the Scotts Valley Gas station robbery, we cannot say that the court abused its discretion under section 352.

Although Blander identified appellant as the Scotts Valley Gas station robber, Blander was an accomplice and as such her testimony had to be corroborated. Penal Code section 1111 provides that "[a] conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense . . . ."  To corroborate the testimony of an accomplice, the prosecution must produce independent evidence which, without aid or assistance from the testimony of the accomplice, tends to connect the defendant with the crime charged.  (*People v. Luker* (1965) 63 Cal.2d 464, 469.)  The other crimes-evidence did just that.  As such, it was not cumulative of other evidence.

Appellant argues that the evidence from the Econo Gas station video and the evidence of what was found in the car and storage locker provided the prosecutor with "more than ample evidence" to connect him with the charged robbery and corroborate Blander's testimony.  We disagree.  All the Econo Gas station video showed was that appellant and Blander entered the Econo Gas station while appellant was carrying a Spiderman backpack; and the evidence found in the car and storage locker showed only that appellant possessed stolen property.  Much more was needed to show that appellant was the actual robber who wielded a gun at the Scotts Valley Gas station.

As to appellant's argument that there was no need to provide the "backstory" of the robbery of Kossev that occurred before his visit to the Econo Gas station, appellant

forgets that Kossev was the only person that tied appellant to a robbery while appellant wore the distinctive Spiderman backpack, and in so doing corroborated Blander's testimony.

In sum, the trial court did not abuse its discretion in admitting evidence of the six uncharged robberies to show identity in this case.

Finally, even if this court assumed for the sake of argument that the court erred in admitting evidence of the six uncharged robberies to show identity, such error is evaluated under the standard of prejudice announced in *People v. Watson* (1956) 46 Cal.2d 818, 836—i.e., whether it is reasonably probable that a result more favorable to appellant would have been reached had the jurors not been exposed to the evidence of the uncharged robberies. (*Williams*, *supra*, 170 Cal.App.4th at p. 612.) Appellant cannot make such a showing. In fact, he concedes that absent the evidence of the uncharged robberies, there was still " 'more than ample evidence' to connect [him] with the charged robbery and corroborate" Blander's testimony. Given that the only disputed issue in this case was whether appellant was one of the men who entered and robbed the Scotts Valley Gas station, his concession on this point is dispositive of the prejudice issue on appeal.

*Disposition*

The judgment is affirmed.

                                                  _____

                                                  ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

GROVER, J.

*The People v. Jenkins*
H041543